HELEN Y. IRION, HARLAN IRION, Robert Washington, Jr., and J. O. Washington, Jr., Petitioners,. v. GLENS FALLS INSURANCE COMPANY, a New York corporation, Farmers Insurance Company, a California corporation, and Hartford Isurance Company, a Connecticutt corporation, Respondents.

No. 11653.
Submitted Oct. 27, 1969.
Decided Nov. 14, 1969.
Rehearing Denied Dec. 3, 1969.
461 P.2d 199.

Hughes & Bennett, Helena, Michael J. Hughes argued, Helena, Colgrove & Brown, Roland V. Colgrove argued, Lucas & Jardine and Thomas Monaghan, Miles City, for petitioners.

Robert L. Kelleher and Charles A. Bradley, argued, Hutton, Schiltz & Sheehy, John C. Sheehy, appeared, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original declaratory judgment action filed pursuant to the provisions of Rule 1 of the Rules of the Montana Supreme Court based upon a certification to this Court by the Hon. William J. Jameson, the United States District Judge presiding in Civil Action No. 736 in the United States District Court for the District of Montana, Billings Division, entitled "Glens Falls Insurance Co., a New York corporation, Plaintiff, vs. Helen Y. Irion and Robert Washington, Jr., J. O. Washington, Jr., Farmers Insurance Co., a California corporation, Harlan Irion and Hartford Insurance Co., a Connecticut corporation, Defendants", that in said action there is a controlling question of Montana law as to which there is a substantial ground for difference of opinion, viz.: the ownership of a certain 1957 Mercury automobile operated by J. O. Washington, Jr. on November 14, 1965, at the time it collided with a vehicle owned by Harlan Irion and in which Helen Y. Irion was a passenger.

The issue presented for review, or the question for determination, as stated by Judge Jameson in his Certificate of Facts and Issues on file here, is as follows:

"The question upon which determination is sought is whether, on November 14, 1965, at the time of the collision between the 1957 Mercury automobile driven by J. O. Washington, Jr., and the motor vehicle driven by Harlan Irion in which Helen Y. Irion was a passenger, the 1957 Mercury automobile was owned by Plaza Chrysler-Plymouth, Inc., by reason of the failure by it, by Kenneth Ulstad, by Robert Washington, Jr., or by any

other person, to cause a change in the certificate of ownership covering said 1957 Mercury automobile, as shown by Exhibit 'A', by making application for a change of registration as provided in Section 53-109, R.C.M.1947, and, if said 1957 Mercury automobile was owned by Plaza Chrysler-Plymouth, Inc., on said date, by reason of such failure, whether Glens Falls Insurance Company insured J. O. Washington, Jr., against liability imposed by law for injuries to the persons and property of Harlan Irion and Helen Y. Irion arising out of his operation of said 1957 Mercury automobile at the time of the collision on November 14, 1965, under either its Policy No. PCL 639587 issued to Plaza Chrysler-Plymouth, Inc., Exhibit 'F', or its Policy No. GA-4-23-39 issued to Kenneth Ulstad, Exhibit 'E', or both thereof.

"This question involves an interpretation of Section 53-109, R.C.M.1947, and its bearing upon automobile insurance policies issued in Montana, upon which there is substantial difference of opinion, and the answer thereto is controlling in the above entitled action and adjudication thereof by the Montana Supreme Court will materially advance the ultimate termination of this action."

The facts giving rise to the issue above stated are set forth in Judge Jameson's Certificate of Facts and Issues. Summarizing them, the controversy revolves around whether J. O. Washington, Jr. was insured against personal injury liability and property damage liability by one or more of three policies of insurance issued by Glens Falls Insurance Company while driving a 1957 Mercury automobile on November 14, 1965, when he collided with a motor vehicle owned and operated by Harlan Irion in which Helen Y. Irion was a passenger, thereby inflicting severe personal injuries to both Irions and damage to the Irion vehicle, a question which in large part depends upon who was the owner of that vehicle at the time.

One Sherley M. Shelton had been the owner of the Mercury automobile, and held the Montana certificate of title thereto.

On August 12, 1965, he purchased a new automobile from Plaza Chrysler-Plymouth, Inc., a licensed dealer in new and used motor vehicles at Billings, (hereinafter referred to as "Plaza") and traded in the Mercury. Between August 25, 1965, and September 1, 1965, he delivered his certificate of title to Plaza after executing the assignment of title on the reverse side thereof in blank before a notary public. The Midland National Bank of Billings, Montana had a recorded lien on the vehicle and Plaza took care of getting an instrument from the bank which would authorize the Registrar of Motor Vehicles to release the lien. Shelton also delivered the current Montana Certificate of Registration and Tax Receipt for the Mercury to Plaza.

Meanwhile, Plaza had delivered the Mercury to Kenneth Ulstad, operator of a body and paint shop. Ulstad was not a licensed automobile dealer but occasionally took used automobiles from dealers at an agreed price in partial satisfaction of claims he had against such dealers for work he had performed for the dealers, performed such repairs as he deemed advisable, and resold them. In this instance, he credited Plaza's account with $95 for the Mercury. Plaza subsequently delivered Shelton's Certificate of Title, Certificate of Registration and Tax Receipt, together with the bank's lien release to Ulstad.

On September 15, 1965, Kenneth Ulstad sold the Mercury to Robert O. Washington, Jr., who paid him $295 therefore; Ulstad then delivered the Shelton Certificate of Title, Certificate of Registration and lien release to him.

Neither Plaza, Ulstad, nor Robert O. Washington, Jr., ever took any steps to have a new certificate of title issued.

Robert O. Washington, Jr. and his brother, J. O. Washington, Jr., resided in the same household with their parents, Mr. and Mrs. Robert O. Washington. J. O. Washington, Jr. owned an automobile which was insured by Farmers Insurance Co. The senior Robert O. Washington had a so-called "Family Automobile Policy" issued by Glens Falls Insurance Company, (here-

inafter called "Glens Falls") but which did not specifically describe the Mercury as an insured vehicle.

On November 14, 1965, Robert O. Washington, Jr. permitted his brother to drive the Mercury. While he was doing so, it collided with the Irion vehicle inflicting injuries and damage. Irion's collision insurer was Hartford Insurance Co. and upon payment of the collision loss, it became subrogated to Irion's claim against J. O. Washington, Jr. for the property damage.

In addition to the Family Automobile Policy issued to Robert O. Washington, Glens Falls also had in effect on November 14, 1965, two garage liability policies which it had issued to Plaza and to Ulstad.

J. O. Washington, Jr. gave prompt notice of the accident of November 14, 1965, to Glens Falls, but it asserted it had no obligation with respect to said accident and that J. O. Washington, Jr. was not insured by it.

Helen Y. Irion commenced an action against J. O. Washington, Jr. to recover damages for her injuries on January 12, 1966. At first Glens Falls refused to defend this action. It then, on April 24, 1968, commenced a declaratory judgment action in federal court seeking a determination that it was not obliged to do so and attempted unsuccessfully to have the federal court enjoin the prosecution of the personal injury action until this determination was made. It then made an unsuccessful attempt to have this Court do the same thing. See State ex rel. Glens Falls Insurance Company v. District Court, Mont., 440 P.2d 269 (1968). Finally, on the morning the case was set for trial, counsel for Glens Falls appeared and took over the defense of J. O. Washington, Jr. under an oral unilateral reservation of rights. Trial resulted in a judgment in favor of Helen Y. Irion for $140,000.

Meanwhile, the Irions and their collision insurer, Hartford Insurance Co., filed suit against Robert Washington, Jr. and J. O. Washington, Jr. for damages to the Irion vehicle and

Harlan Irion filed suit against J. O. Washington, Jr. for damages for his personal injuries.

Although it does not appear from the complaint for a declaratory judgment filed in federal court by Glens Falls, the reason it denied coverage under the Family Automobile Policy issued to the senior Robert O. Washington, was that the policy limited coverage to persons or property arising out of the use of the "owned automobile" or any "non-owned automobile", but then required that an "owned automobile" had to be described in the policy or be a replacement or a temporary substitute for a described automobile, which the Mercury was not, and further required that a "non-owned automobile" be "not owned by or *furnished for the regular use of either the named insured or any relative"*, while, so Glens Falls asserted, the Mercury was neither owned by nor furnished for the regular use of Robert O. Washington, Jr., a relative of the named insured.

On the other hand, in its amended complaint, Glens Falls asserted that "it is unable to determine if it had any responsibility to the said J. O. Washington, Jr., as a result of the aforementioned automobile accident" under its garage liability policies, because of two conflicting decisions, viz: Safeco Insurance Company of America v. Northwestern Mutual Ins. Co., 142 Mont. 155, 382 P.2d 174 (1963), and National Farmers Union Property & Cas. Co. v. Colbrese, C.A. 9, 368 F.2d 405 (1966); but then asserted in its amended complain that "the rule of law as announced by the said Circuit Court of Appeals in the aforesaid mentioned Colbrese case as pertains to insurance coverage and ownership of motor vehicles the petitioner verily believes to be the correct rule of law and the rule of law that should be applied to the facts herein mentioned."

Glens Falls filed two briefs, one directed to a motion to quash the order of this Court accepting jurisdiction of this action. Glens Falls argues that the federal district court was without authority to certify the basic question of interpretation of section 53-109, R.C.M.1947. Suffice it to say that Glens Falls

sought to have the Court of Appeals of the Ninth Circuit compel Judge Jameson to vacate the certification and was summarily denied. (Glens Falls Insurance Co., of New York, Petitioner v. The Honorable W. J. Jameson, United States District Judge for the District of Montana, Billings Division, Respondent, decided May 9, 1969.)

Additionally, Glens Falls now argues that this Court, under Rule 1, lacks authority to entertain such a certification. We have before us what is described as the identical brief filed before the Ninth Circuit Court, and its form with footnotes and all, so indicates. We shall merely say that we do have such authority and that this is a proper case to exercise the authority.

Now, as to the merits. Subsection (c) of section 53-109, R.C.M.1947, contemplates that when an automobile dealer purchases a used vehicle previously registered in Montana, he shall hold the certificate of title, and when he resells the car he, the dealer, shall have the purchaser sign an application for a new certificate of title, and that he, the dealer, shall forward the old certificate containing this application to the registrar of motor vehicles, who then issues a new certificate of title to the purchaser. Thus, paragraph (c) provides:

"(c) The provisions of subdivision (b) of this section, requiring a transferee to forward the certificate of ownership after endorsement and the certificate of registration to the registrar, *shall not apply* in the event of the transfer of a motor vehicle to a duly licensed automobile dealer intending to resell such vehicle and who operates the same only for demonstration purposes, but every such dealer shall upon transferring such interest deliver such certificate of ownership and certificate of registration *with an application for registration executed by the new owner in accordance with the provisions of section 53-107*, and the registrar upon receipt of said certificate of ownership, certificate of registration and application for registration, together with the conditional sales contract or other lien, if any, shall issue a new certificate of ownership and certificate of

registration together with a statement of any conditional sales contract, mortgage, or other lien as provided in said section 53-107." (Emphasis supplied.)

Paragraph (d) then goes on to put teeth into this requirement by providing:

*"Until said registrar shall have issued a certificate* of registration and certificate of ownership and statement as hereinbefore provided, *delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose."* (Emphasis supplied.)

Paragraph (a) of section 53-109 requires that upon a transfer of any title or interest of an owner in or to a motor vehicle registered under the provisions of the act, the person whose title or interest is to be transferred shall write his signature with pen and ink upon the certificate of ownership in the appropriate space provided upon the reverse side of such certificate, and such signature shall be acknowledged before a notary public. This is exactly what Sherley M. Shelton did, so, since Plaza was a dealer, it acquired title to the motor vehicle, without the necessity of having it registered in its name. But title never passed from Plaza to Ulstad nor from Ulstad to Robert Washington, Jr., because of Plaza's failure to observe the duty placed upon it by paragraph (c). Not only did title not pass, but despite physical delivery, in contemplation of the law no delivery occurred and possession legally remained in Plaza, which would mean that anyone operating this automobile would be doing so as agent or bailee of Plaza.

When the legislature provided that the "intended transfer shall be incomplete and not be valid or effective for any purpose" did it mean what it said so that it would have a bearing on coverage afforded by a garage owner's liability policy? This Court has twice answered this question in the affirmative.

Safeco Insurance Company of America and Harlan Dean v. Northwestern Mutual Insurance Company and Bear Paw Sales

and Service, Inc., 142 Mont. 155, 382 P.2d 174 (1963), also involved a garage owner's liability policy. On May 9, 1960, Bear Paw was engaged in the new and used car business as a dealer at Havre and had on hand a 1958 Studebaker car which it had acquired on a trade and for which it held the certificate of title. Northwestern had issued to Bear Paw a blanket garage owner's liability insurance policy covering vehicles owned by Bear Paw while used in its business or while being driven with its permission and consent. On that day Harlan Dean brought his Hillman car on which the certificate of title had been issued to him subject to a mortgage to a Havre bank and which was covered by a liability policy issued by Safeco which insured Dean against liability while operating the Hillman or any "owned" replacement for it. Dean took the car on a tryout basis on that day with the understanding that the price was $350 plus his Hillman tradein. *The next day Dean told the Bear Paw people that he would take the Studebaker* and continued in possession of the car and on the following day he was involved in a serious accident. The question before the Court was whether Dean was the "owner" of the Studebaker on May 11, 1960, in which event the Safeco policy would be solely responsible, or whether Bear Paw was the "owner" on that date, in which event the Northwestern garage owner's liability policy furnished coverage up to its limits, and Safeco would be only an excess insurer. Safeco contended that under section 53-109(d) a change of ownership cannot be effected orally or in any other manner than through transfer of the certificate of title as required by the statute, while Northwestern contended that the statute is a recording statute governing the record title as distinguished from ownership, and, further, that Dean fell within the definition of "owner" found in section 53-133(f), R.C.M.1947. This Court disagreed with Northwestern's contentions and said:

"We must adhere to the tenor of our former interpretations that the provisions of the motor vehicle code provide the ex-

clusive method of accomplishing a valid sale and transfer of a motor vehicle.

"No attempt having been made by either Dean or Bear Paw to comply with section 53-109, supra, we must hold there was never a completed sale and the judgment must be reversed."

The question was before this Court again in Ostermiller v. Parker, 152 Mont. 337, 451 P.2d 515 (1968). There William Parker purchased a Mercury automobile from a Billings automobile dealer on July 15, 1964. He traded in a Chevrolet, gave the dealer $100 in cash, and gave the dealer his promissory note for two additional $38 payments to be made on August 2 and August 20, 1964, at which time the car was to belong to his son Michael. He also signed a purchase order agreement. The dealer kept the certificate of title, the certificate of registration, the notice of lien and the release of lien, apparently as a form of security for payment of the promissory note. Eleven days later Michael, while driving the Mercury, was involved in an accident which gave rise to an action against him for damages for personal injuries by Ostermiller. After the accident, William Parker paid the balance due on the promissory note and was given the certificate of title, certificate of registration, notice of lien and release of lien, but did not send these documents to the registrar of motor vehicles to have the Mercury registered in his or his son's name because it had been demolished in the accident. Glens Falls Insurance Company had in effect a garage liability policy insuring the automobile dealer.

Glens Falls settled the Ostermiller claim against Michael Parker but brought a third party action against two other insurance companies contending that policies issued by such companies afforded coverage and that its policy did not because there was a completed sale on July 15, 1964, and hence its insured, the automobile dealer, was not the owner of the Mercury at the time of the accident. One of the other companies was Nationwide Mutual Insurance Company which had issued a

policy to William Parker similar to that issued by Glens Falls to Robert O. Washington in the instant case in that it excluded from coverage a vehicle furnished for the regular use of the insured or a member of the same household. This Court concluded in essence that the Mercury was not owned by either Parker, but by the automobile dealer, *but that it was furnished for the regular use of the policyholder or a member of the same household.*

The Ostermiller case is thus authority that in this case the policy issued by Glens Falls to Robert O. Washington afforded no coverage to J. O. Washington, Jr. On the other hand, it is also authority that in this case Plaza, the dealer charged with the statutory duty of causing transfer of title by forwarding the necessary documents to the registrar of motor vehicles, remained the owner of the Mercury automobile here involved by its failure to do so, expressly affirming the Safeco case in this respect.

Here, Glens Falls argues that there is a factual difference from the Safeco and Ostermiller cases and that is that Robert O. Washington, Jr. had it within his power to secure a certificate of title and certificate of registration. Should this call for a different result? We think not. In the first place, it would require him to falsify the certificate of title by inserting his name as purchaser from Sherley M. Shelton so that it would appear to be a transaction between two individuals.

Secondly, a contrary holding would negate the legislative policy expressed by section 53-109. The legislature has exempted duly licensed automobile dealers from the requirement by paragraph (b) of section 53-109 of securing registration of their vehicular stock in trade, a requirement which would be onerous, but the price the dealers pay for this privilege is that they, the dealers, and not their customers, are to see to the timely and proper registration on resale, and, if they do not, the legislature, in paragraph (d) of section 53-109, has provided a penalty —the dealer will remain the owner with all the responsibilities

of ownership—his sale and transfer of possession will be deemed not to have been made and the "intended transfer * * * incomplete and not * * * valid or effective for any purpose."

In Colbrese, the Court of Appeals distinguished the Safeco case on its facts. We acknowledge that the facts are different, but Judge Jameson in Colbrese in the District Court, 227 F. Supp. 978, gauged this Court's meaning correctly. There he said at page 981 of 227 F.Supp.:

"It is true, as defendant argues, that this case is factually distinguishable from Safeco. In one critical respect, however, they are the same. In neither case had the transferor written 'his signature with pen and ink on the certificate of ownership and had it acknowledged before a notary public', or delivered the certificate, endorsed or otherwise, to the transferee. * * *

(At this point, we note Judge Jameson's footnote #6 where he said, "It might well be that a different case would be presented had the tranferor signed and delivered the certificate of ownership to the tranferee, and the delay in issuance in the certificate of ownership was due either to the fault of the transferee or the registrar. * * *")

"As I read Safeco, the court says that, 'In any regular transaction the new certificate of ownership is required to be issued by the registrar and issues as a matter of course.' In that event, the transfer 'becomes complete and valid and dates back to the time of transfer between the parties. If, however, the transfer has not been made in compliance with the statute and the registrar by reason thereof does not issue a new certificate of ownership, there was no transfer of ownership in its inception'. (Emphasis supplied.) Here, as in Safeco, the transfer has not been made by the parties in compliance with the statute. Under the holding of the Montana Supreme Court, 'there was no transfer of ownership in its inception' and there 'was never a completed sale'.

"The memorandum of the defendant filed in advance of pretrial conference contains the following:

"* * * to people who know insurance, the Montana Supreme Court's decision in Safeco Insurance Company would be clearly wrong. The Court applied the provisions of 53-109(d) without any regard to the fact that as between the parties there was a contract in the policy of insurance as to what an ''owned automobile'' was. The same provision appears in the policy in the case at bar * * * We can predict with a fair degree of certainty at some future date the Supreme Court will have to reverse itself and hold that an insurance policy is not applicable to a newly acquired automobile before the certificate of title is issued, which would be contrary to the Safeco Insurance holding here.' ''

This quoted observation and prediction of defendant quoted by Judge Jameson may have validity if it were applied to a fact situation suggested by Judge Jameson in his footnote quoted above. Paragraph (d) of section 53-109, R.C.M.1947, applies to paragraphs (a), (b), and (c) of that section insofar as a party to a transfer fails to follow the law.

We observe, as we did in Safeco, ''There is nothing unrealistic, technical or artificial about this simple procedure for the transfer of ownership of a motor vehicle. * * *''. Safeco Ins. Co., of America v. Northwestern Mutual Ins. Co., 142 Mont. 155, 164, 382 P.2d 174, 178.

Thus, Plaza, in the instant case, failed to comply with the requirements of section 53-109, R.C.M.1947, and remained the owner of the Mercury automobile and was covered by the garage policy.

From what we have heretofore said, it is clear that Ulstad did not comply with the statute either. It is also clear that Ulstad was not the owner, because Plaza still was. But, it did come into Ulstad's dominion in connection with his garage operations. Glens Falls policy of insurance covered the Mercury under its clause which provided:

"2. *Automobile Not Owned or Hired.* The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein or a member of the same household as any such person."

For the foregoing reasons the "Question for Determination" set forth in Judge Jameson's "Certificate of Facts and Issues" is answered. The Mercury automobile was "owned" by Plaza and was covered by its garage policy. Likewise, by reason of Ulstad's failure to comply with the statute, Ulstad's policy of insurance was equally liable.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and HASWELL, and The Honorable L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE BONNER, concur.