**Rebecca HOLDEN, Gregory Holden, Denise Holden, and Jeffrey Holden, by and through their Parent and Next Friend Debra Holden and Debra Holden, Plaintiffs,**

v.

**N L INDUSTRIES, INC., a corporation, Defendant.**

**No. 17159.**

Supreme Court of Utah.

April 28, 1981.

Ralph Dewsnup, Salt Lake City, for plaintiffs.

J. Dennis Frederick, Salt Lake City, for defendant.

OAKS, Justice:

This controversy began as a wrongful death action by the widow and surviving children of an employee killed in an explosion of equipment designed, manufactured and supplied by the defendant, who was decedent's employer. The action was commenced in the United States District Court for the District of Utah, Central Division, under that court's diversity jurisdiction. Defendant moved to dismiss on the ground that under Utah law, which the federal court was bound to apply in this diversity case,[1] plaintiffs' exclusive remedy was the workmen's compensation recovery. Finding Utah law unclear on the subject of defendant's motion, the federal district court certified two questions to this Court.

The federal district court has sought our ruling on whether the exclusive remedy provision of Utah's Workmen's Compensation Act, § 35–1–60, bars plaintiffs' claims against defendant-employer, or whether, as an exception to that rule, plaintiffs can collect (1) for the tort of fraud, which caused his death, or (2) for actions, conduct and relationships attributable to defendant's status as manufacturer and supplier independent of its status as an employer, the so-called "dual capacity doctrine." In this Court, defendant has filed a motion in opposition to acceptance of certification. The issue in this motion is what, if any, response this Court should make to the questions of state law certified by the federal district court.

Approximately 20 states have adopted procedures for ruling on questions of state law certified to them by the federal courts to aid those courts in their application of state law on diversity cases.[2] The certified questions in this case are the first received by this Court under our Certification Rule adopted April 17, 1975, which is set out in the footnote.[3] For the reasons detailed be-

1. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1930).

2. See generally, Lillich and Mundy, *Federal Court Certification of Doubtful State Law Questions*, 18 U.C.L.A.L.Rev. 888 (1971); Mattis, *Certification of Questions of State Law: An Impractical Tool in the Hands of the Federal Courts*, 23 U.Miami L.Rev. 717 (1969); Note, *Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism*, 111 U. of Pa.L.Rev. 343 (1963); Note, *Inter-Jurisdictional Certification and Full Faith and Credit in Federal Courts*, 45 Wash.L.Rev. 167 (1970); Note, *Abstention and Certification in Diversity Suits: "Perfection of Means and Confusion of Goals*," 73 Yale L.J. 850 (1963).

3. (a) Power to Answer. The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or a United States District Court, when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

(b) Method of Invoking. This rule may be invoked by an order of any of the courts referred to in section (a) upon said court's own motion.

(c) Contents of Certification Order. A certification order shall set forth:

(1) The question of law to be answered; and

(2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

(d) Preparation of Certification Order. The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to the Supreme Court by the clerk of the certifying court under its official seal. The Supreme Court may require the original or copies of all or of any portion of the record before the certifying court to be filed under the certification order, if, in the opinion of the Supreme Court, the record or portion thereof may be necessary in answering the questions.

(e) Costs of Certification. Fees and costs shall be the same as in civil appeals docketed before the Supreme Court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

(f) Briefs and Arguments. Upon the agreement of the Supreme Court to answer the questions certified to it, notice shall be given to all parties. The plaintiff in the trial court, or the appealing party in the appellate court shall file his opening brief within thirty days from the date of receipt of the notice, and the opposing parties shall file an answer brief

low, we have concluded that if this Court were to answer questions certified under this Rule it would exceed the Court's constitutional jurisdiction. This Court's Certification Rule is therefore withdrawn, and the request for certification in this case is dismissed.

To be valid, our Certification Rule must be consistent with Article VIII, Section 4 of the Utah Constitution, which confers jurisdiction on this Court. That section provides:

> The Supreme Court shall have original jurisdiction to issue writs of mandamus, certiorari, prohibition, quo warranto and habeas corpus. Each of the justices shall have power to issue writs of habeas corpus, to any part of the State, upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the Supreme Court or before any district court or judge thereof in the State. *In other cases the Supreme Court shall have appellate jurisdiction only*, and power to issue writs necessary and proper for the exercise of that jurisdiction. [Emphasis added.]

This section grants no "original jurisdiction" to answer certified questions since certification does not involve one of the writs to which this Court's original jurisdiction is limited. In contrast, Colorado's certification rule, Colo. Appellate Rule 21.1 (as amended, 1976), cited by plaintiffs, is soundly based on the original jurisdiction portion of the Colorado Constitution, which reads: "The supreme court shall have power to issue writs . . . and such other original and remedial writs as may be provided by rule of court with authority to hear and determine the same." [4] Significantly, the

comparable "all writs" provision in the Utah Constitution, set out in the second clause of the last sentence of the quoted section, limits its grant of the "power to issue writs" to those "necessary and proper for the exercise of that [appellate] jurisdiction."

The only other source of jurisdiction for this Court's Certification Rule is the sentence in Article VIII, Section 4, which provides: "In other cases the Supreme Court shall have appellate jurisdiction only . . . ." The comparable provision in most state constitutions omits the word *only*. In the absence of that negative, the constitutional conferral of appellate jurisdiction would be susceptible to the construction that the court's jurisdiction could be enlarged by an exercise of legislative or judicial power, by law or by court rule. Such was the case in *In re Elliott*, 74 Wash.2d 600, 446 P.2d 347 (1968), cited by plaintiff, where the Washington Supreme Court upheld the constitutionality of a statute providing for certification. The Washington Constitution grants the Supreme Court "appellate jurisdiction in all actions and proceedings . . . ." [5] Since this provision contained no limitation like we have in the Utah Constitution, the Washington Legislature was free to define its court's jurisdiction to include the functions specified in the certification legislation.

Similarly, the Florida Supreme Court, in sustaining the constitutionality of certification proceedings in that state, was careful to stress that its ruling dealt with a circumstance which the court characterized as "the absence of a constitutional provision expressly or by necessary implication limiting the jurisdiction of the Supreme Court to

---

4. Colo.Const., Article VI, Section 3. The Colorado certification rule, which is reproduced under the "original jurisdiction" subheading in Colorado's appellate rules, has been applied, e. g., in *A–B Cattle Co. v. United States*, 196 Colo. 539, 589 P.2d 57 (1978); and *Almarez v. Carpenter*, 173 Colo. 284, 477 P.2d 792 (1970).

5. Wash.Const., Article IV, Section 4.

within thirty days from service upon him of copies of the opening brief. A reply brief may be filed within twenty days of the service of the answer brief. Briefs shall be in the manner and form of briefs as provided in this Court.

(g) Opinion. The written opinion of the Supreme Court stating the law governing the questions certified shall be sent by the clerk under the seal of the Supreme Court to the Certifying court and to the parties.

those matters expressly conferred upon it ...."[6] Alabama's Constitution formerly granted its Supreme Court "appellate jurisdiction only," but that provision was replaced in 1973 by a provision specifically authorizing it "to answer questions of state law certified by a court of the United States."[7]

So far as the parties' briefs and our research have disclosed, Colorado is the only state with an interjurisdictional certification procedure whose constitution grants its supreme court "appellate jurisdiction only." As already noted, Colorado's certification rule is grounded on original rather than appellate jurisdiction. Consequently, even though approximately 20 states have certification procedures—many already approved by their highest courts—none of these states provides any precedent for the certification procedure in Utah. We therefore agree with defendant's argument that this Court's answering of questions of state law certified by the federal courts under our certification rule can be justified only if that type of judicial activity is an exercise of "appellate jurisdiction."

█ This Court has never defined the term "appellate jurisdiction" as it is used in Article VIII, Section 4 of the Utah Constitution, but there are ample authorities defining the term as used in other constitutions. In two cases concerning its jurisdiction to issue a writ of habeas corpus, the United States Supreme Court defined "appellate jurisdiction" as "the revision of a decision of an inferior court." *Ex Parte Bollman*, 4 Cranch 75, 101, 2 L.Ed. 554 (1807) (Marshall, C. J.); *Ex Parte Watkins*, 7 Pet. 568, 573, 8 L.Ed. 786 (1833) (Story, J.).[8] Interpreting its constitution, the Oklahoma Supreme Court stated: "Appellate jurisdiction is that power and jurisdiction to review and correct those proceedings of inferior courts ...."[9] Other state courts have made nearly identical comments concerning the meaning of "appellate jurisdiction" in their constitutions.[10]

"Appellate jurisdiction" obviously connotes review of the action of an *inferior court*. "Inferior court" has been appropriately defined as "any court subordinate to the chief appellate tribunal in the particular judicial system."[11] Federal courts are not "inferior courts" to this Court. Consequently, this Court's answer to a certified question in a case that originated in or is to be adjudicated in a federal court is not an exercise of "appellate jurisdiction" within the meaning of the Utah Constitution.[12]

The procedure devised to permit federal courts to certify questions of state law for state courts to answer is a commendable effort to further the interest of justice through cooperative efforts by state and federal courts. If our constitutional powers permitted us to be involved in that kind of cooperative effort, and if other legal questions unnecessary to the disposition of this case could be resolved,[13] we would have no

**6.** *Sun Insurance Office, Limited v. Clay*, Fla., 133 So.2d 735, 742 (1961), construing Fla. Const., Article V, Sections 3 and 4.

**7.** Ala.Const., Art. VI, Section 140 (Amend. No. 328).

**8.** The United States Supreme Court had no "original jurisdiction" to issue a writ of habeas corpus and therefore had to justify its issuance of the writ as an exercise of its constitutional "appellate jurisdiction."

**9.** *Carder v. Court of Criminal Appeals*, Okl., 595 P.2d 416, 419 (1978).

**10.** *Ward School Bus Mfg., Inc. v. Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977); *In Re Edinger's Estate*, N.D., 136 N.W.2d 114 (1965).

**11.** *Black's Law Dictionary* 700 (5th ed. 1979).

**12.** The requested certification in this case is distinguishable from a request of the United States Supreme Court for a clarification of the opinion or basis of action of this Court in a case being reviewed by the higher court. If this Court had constitutional jurisdiction when it considered the case originally, its response to the requested clarification would seem to be among the authorized powers "necessary and proper for the exercise of that jurisdiction." Utah Constitution, Article VIII, Section 4.

**13.** Among the other questions briefed but not decided in this case are those pertaining to justiciable controversy and advisory opinions, and the perhaps countervailing considerations of comity, crowded dockets, and delay. See authorities cited in note 2, *supra*.

hesitancy. But under the current language of our constitution, we must conclude that this Court has no jurisdiction to provide federal courts the requested ruling on state law.

The Certification Rule of this Court is accordingly withdrawn and the request for certification in this case is dismissed.

MAUGHAN, C. J., and HALL, STEW-ART and HOWE, JJ., concur.