666 P.2d 1144

**SUNSHINE MINING COMPANY, a corporation, Plaintiff,**

v.

**ALLENDALE MUTUAL INSURANCE COMPANY, a corporation, Allianz Insurance Company, a corporation, et al., Defendants.**

**No. 99034.**

Supreme Court of Idaho.

July 14, 1983.

Richard C. Mellon, Jr., Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiff.

Christopher Burke, Esq., Clemons, Cosho & Humphrey, P.A., Boise, for defendants.

DONALDSON, Chief Justice.

This proceeding is in this Court pursuant to the certification procedure set forth in I.A.R. 12.1[1] (adopted April 3, 1981; effective July 1, 1981). The United States District Court for the District of Idaho has certified five questions to the Idaho Supreme Court as presenting controlling questions of Idaho law with respect to a pending federal case, *Sunshine Mining Company v. Allendale Mutual Insurance Company,* Civ. No. 80–1276. The District Court also certified that "immediate determination of Idaho law with respect to these questions will materially advance the orderly resolution of the action in the United States District Court."

1. In its entirety I.A.R. 12.1 provides:

"Rule 12.1. Certification of a question of law from a United States court.—(a) Certification of a Question of Law. The Supreme Court of the United States, a Court of Appeals of the United States or a United States District Court may certify in writing to the Idaho Supreme Court a question of law asking for a declaratory judgment or decree adjudicating the Idaho law on such question if such court, on the court's own motion or upon the motion of any party, finds in a pending action that:

"(1) The question of law certified is a controlling question of law in the pending action in the United States court as to which there is no controlling precedent in the decisions of the Idaho Supreme Court, and

"(2) An immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States court.

"(b) Filing with Idaho Supreme Court. Upon the certification of a question of law to the Idaho Supreme Court under this rule, the United States court or any party in the action pending in that court, may file a certified copy of its order of certification with the Idaho Supreme Court without the payment of any filing fee. Any party to the action pending in the United States court may file a statement or brief in support of, or in opposition to, the certification of the question of law to the Idaho Supreme Court within fourteen (14) days from the date of filing of the Order of Certification.

"(c) Acceptance by the Idaho Supreme Court. The Idaho Supreme Court may in its discretion accept the question of law certified by the United States court under this rule unless it finds that it appears that there is another ground for determination of the case pending in the United States court, or that the question certified for adjudication under this rule is not clearly defined in the Order of Certification, or that there is not an adequate showing that the question of law qualifies for determination under subsection (a) of this rule. The Idaho Supreme Court will enter an order either accepting or rejecting the question certified to it by the United States court and serve copies of such order upon the United States court and all parties to that pending action. If the Idaho Supreme Court accepts the certified question of law for adjudication, the Idaho Supreme Court will, in its order of acceptance, set forth the procedure to be followed in the adjudication proceeding including the sequence and time for the filing of briefs by the parties to the pending action in the United States court. The Idaho Supreme Court may, in its discretion, also require copies of all or any portion of the clerk's record or reporter's transcript before the United States court to be filed with the Court, if in the opinion of the Court such documents are necessary in the determination of the question certified.

"(d) Argument on Certified Question Before the Idaho Supreme Court. Upon acceptance of a question of law for adjudication under this rule, the Idaho Supreme Court will at that time, or at such later time as the Court deems appropriate, determine whether oral argument is required on the certified question of law and will advise the parties to the pending action in the United States court as to the time, place and procedure for presenting oral arguments to the Court.

"(e) Adjudication of Certified Question of Law. Upon adjudication of a question of law certified under this rule, the Idaho Supreme Court will issue a written opinion in the same manner as an opinion in an appeal to the Idaho Supreme Court and such opinion shall be distributed, published and reported in the same manner as an opinion in an appeal."

■ As allowed by I.A.R. 12.1(b), a brief was filed in this Court by defendants in opposition to certification which was followed by briefs filed in support of certification by Sunshine Mining Company. The Court held a hearing on the issue presented by the briefs—whether I.A.R. 12.1 is constitutional under the Idaho Constitution. Thus, we consider in this opinion whether this Court has constitutional jurisdiction to entertain questions certified from federal courts pursuant to I.A.R. 12.1. For reasons set forth below, we conclude that I.A.R. 12.1 is constitutional and that the certification procedure established therein is valid.

The highest courts of several states have considered the constitutional ramifications of the certification process[2] under their respective state constitutions. Certification processes established by statute or court rule have been expressly held valid under various state constitutions, *Sun Insurance Office, Ltd. v. Clay,* 133 So.2d 735 (Fla. 1961); *In re Richards,* 223 A.2d 827 (Me. 1966); *Irion v. Glens Falls Insurance Co.,* 154 Mont. 156, 461 P.2d 199, 203 (Mont. 1969); *In re Elliott,* 74 Wash.2d 600, 446 P.2d 347 (Wash.1968), and held invalid under one state constitution,[3] *Holden v. N L Industries, Inc.,* 629 P.2d 428 (Utah 1981) (court adopted rule held unconstitutional and withdrawn).

The defendants argue that I.A.R. 12.1 is unconstitutional in light of this Court's decision in *Neil v. Public Utilities Commission,* 32 Idaho 44, 178 P. 271 (1919). *Neil* involved an original proceeding brought to procure a writ of review directed to the Public Utilities Commission. Under § 63(a) of the Public Utilities Act, plaintiffs sought review of a Public Utilities Commission decision and order. Section 63(a) provided that the plaintiffs could apply to this Court for a writ of certiorari or review. The *Neil* Court considered the constitutional issue whether the legislature could broaden and extend the original and appellate jurisdiction of this Court provided by article 5, section 9 of the Idaho Constitution.[4] The Court held that the legislature had no such powers under the constitution. The *Neil* opinion did not address the inherent judicial power of this Court. *See In re Petition of Idaho State Federation of Labor (AFL),* 75 Idaho 367, 382, 272 P.2d 707, 716 (1954) (Taylor, J., dissenting).

The defendants argue that if this Court has jurisdiction, it has to be based upon article 5, section 9 of the Idaho Constitution. Section 9 now provides:

"§ 9. Original and appellate jurisdiction of Supreme Court.—The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof, and any order of the public utilities commission, and any order of the industrial accident board: the legislature may provide conditions of appeal, scope of appeal, and procedure on appeal from orders of the public utilities commission and of the industrial accident board. On appeal from orders of the industrial accident board the court shall be limited to a review of questions of law. The Supreme Court shall also have original jurisdiction to issue writs of manda-

---

**2.** For information on the history and development of certification see 1A, Pt. 2 Moore, Taggart, Vestal & Wicker, Moore's Federal Practice ¶ 0.203[5] (2d ed. 1982); 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4248 (1978); Lillich & Mundy, Federal Court Certification of Doubtful State Law Questions, 18 U.C.L.A. L.Rev. 888 (1971); McCree, Foreword, 23 Wayne L.Rev. 255, 259–67 (1977).

**3.** Commentators have suggested that certification may not be possible under particular state constitutions. Wright, Miller & Cooper, *supra* note 2 at 526 and n. 33; Lillich & Mundy, *supra* note 2 at 897 n. 71, 899–900 n. 81.

**4.** Article 5, § 9 as considered by the *Neil* Court provided:

"The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof. The supreme court shall also have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus; and all writs necessary or proper to the complete exercise of its appellate jurisdiction."

It was subsequently amended to provide specifically for appeals from orders of the Public Utilities Commission and Industrial Accident Board. See *infra.*

mus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction."

The defendants further argue that this Court should follow the example of the Utah Supreme Court which recently held unconstitutional its certification rule in *Holden v. N L Industries, Inc.,* 629 P.2d 428 (Utah 1981). The *Holden* court examined the Utah constitutional provision, article 8, section 4[5] which is comparable to our article 5, section 9, and found that it expressly limited the original jurisdiction of the Utah Supreme Court. The critical language of the Utah provision is *"[i]n other cases the* [Utah] *Supreme Court shall have appellate jurisdiction only...."* Utah Const. art. 8, § 4 (emphasis added). Such a limitation is absent from article 5, section 9 of the Idaho Constitution. Thus, the *Holden* rationale does not persuade us that I.A.R. 12.1 is unconstitutional. We may therefore construe our constitution in a manner similar to the construction placed by the Washington Supreme Court upon their constitution. *See In re Elliott,* 74 Wash.2d 600, 446 P.2d 347 (Wash.1968). Such a construction would allow this Court to entertain certified questions by exercise of its judicial power. *See* ID. Const. art. 5, § 2; *In re Elliott, supra; see also Sun Insurance Office, Ltd. v. Clay,* 133 So.2d 735, 742–43 (Fla.1961) ("in the absence of a constitutional provision expressly or by necessary implication limiting the jurisdiction of the [Florida] Supreme Court to those matters expressly conferred upon it ... [or] expressly conferring upon another court jurisdiction to exercise the judicial power [with

respect to certification] ..., such power may be granted to this court...") (emphasis deleted).

■ We consider article 5, section 9 of the Idaho Constitution as limiting and not as granting our jurisdiction. *See Diefendorf v. Gallet,* 51 Idaho 619, 637, 10 P.2d 307, 314 (1932) ("It is a fundamental rule of constitutional law that a state Constitution is an instrument of limitation and not of grant, that all powers are retained to the state not expressly withheld, and the decisions in this state are bottomed squarely upon that rule"); *Sun Insurance Office, Ltd. v. Clay, supra; In re Elliott, supra.* The Washington Supreme Court has stated that:

"So patent is the power of a court to render an opinion in response to a certified question that New Hampshire has adopted the practice by court rule, not waiting for an expression of legislative approval of the idea....

"This [Washington] court, under its rulemaking power ... [citation omitted] could do as the Supreme Court of New Hampshire has done. It could also accept a certified question and respond to it even if there were no implementing statute or rule. It is within the inherent power of the court as the judicial body authorized by the constitution to render decisions reflecting the law of this state." *In re Elliott, supra* 446 P.2d at 358.

We hold that this Court has inherent power to render decisions regarding Idaho law. *See* ID. Const. art. 5, § 2.

We have inherent power under article 5, section 2[6] which vests the judicial power of

---

5. Utah Const. art. 8, § 4 provides:

"The Supreme Court shall have original jurisdiction to issue writs of mandamus, certiorari, prohibition, quo warranto and habeas corpus. Each of the justices shall have power to issue writs of habeas corpus, to any part of the State, upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the Supreme Court or before any district court or judge thereof in the State. *In other cases the Supreme Court shall have appellate jurisdiction only,* and power to issue writs necessary and

proper for the exercise of that jurisdiction." (Emphasis added.)

6. ID. Const. art. 5, § 2 provides:

"§ 2. Judicial power—Where vested.— The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, and such other courts inferior to the Supreme Court as established by the legislature. The courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court. The jurisdiction of such inferior courts shall be as prescribed

the state in this Court. *See Eismann v. Miller,* 101 Idaho 692, 619 P.2d 1145 (1980); *State v. Griffith,* 97 Idaho 52, 539 P.2d 604 (1975).

> "The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the *administration* of justice under the Constitution." *Burton v. Mayer,* [274 Ky. 263] 118 S.W.2d 547, 549 (Ky.1938) (quoted approvingly in *R.E.W. Construction v. District Court of Third Judicial District,* 88 Idaho 426, 435, 400 P.2d 390, 396 (1965) (recognizing inherent rule-making power of this Court)).

We exercised this inherent power in adopting I.A.R. 12.1.

We anticipate and expect that the courts which certify questions to this Court pursuant to I.A.R. 12.1 will accept our answers to such questions as determinative of the law of Idaho.[7] With such expectation, we endorse as constitutional the certification procedure as embodied by I.A.R. 12.1.

Upon this opinion becoming final, an order will be entered setting forth the procedure to be followed in the adjudication. I.A.R. 12.1(c).

SHEPARD and HUNTLEY, JJ., concur.

BAKES, J., concurs in result.

SHEPARD, Justice, specially concurring.

I concur with the majority opinion holding that the promulgation of I.A.R. 12.1 is constitutional under the inherent power of this Court. In view of the majority's heavy reliance upon *In re Elliott,* 74 Wash.2d 600, 446 P.2d 347 (Wash.1968), I feel it necessary to express a caveat.

In the instant case, this Court has exercised its inherent power and rule-making authority. The Washington Court in *Elliott* was confronted with the assertion that the *legislature* had unconstitutionally enacted a statute which *required* that the Supreme Court of that state "shall render" an opinion in response to a request from "any federal court before whom a proceeding is pending." A divided Washington Court upheld the constitutionality of that statute over vigorous dissents. Much in the opinions in *Elliott* dealt with the issue of whether such statute could impose upon the court the duty to render advisory opinions. Within the opinions in *Elliott* are references to the actions of the Supreme Courts of New Hampshire and Maine, who, like Idaho, have approached the certification question through court rule and observations that if New Hampshire could solve the certification problem by court rule, certainly Washington should be able to do so by statute. I view the New Hampshire and Maine situations as totally inapplicable, at least as they may relate to Idaho. The Constitution of the State of Maine provides:

> "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by

by the legislature. Until provided by law, no changes shall be made in the jurisdiction or in the manner of the selection of judges of existing inferior courts."

7. "Certification would be a pointless exercise unless the state court's answers are regarded as an authorative and binding statement of state law.... [I]t is now accepted that state answers are binding." Wright, Miller & Cooper, *supra* note 2, at 532; *see also Tarr v. Manchester Ins. Corp.,* 544 F.2d 14 (1st Cir. 1976); *National Ed. Ass'n, Inc. v. Lee County Bd. of Public Instruction,* 467 F.2d 447, 450 (5th Cir.1972); *Hopkins v. Lockheed Aircraft Corp.,* 394 F.2d 656, 657 (5th Cir.1968) ("It is not just a bright clear light showing the *Erie* -way, or a sign post pointing in an *Erie* direction. Not only is it all of those things, it is much more.

For it is what the law actually is on the precise point presented to us and certified for answer. It is the Florida law binding on us as we perform our *Erie* role"); *Phoenix Ins. Co. v. Newell,* 329 F.Supp. 172, 174 (D.Mont.1971) (follows *Irion v. Glens Falls Ins. Co.,* 154 Mont. 156, 461 P.2d 199 (Mont.1969)); Brown, Fifth Circuit: Certification—Federalism in Action, 7 Cum.L.Rev. 455 *passim* (1977); Lillich & Mundy, *supra* note 2, at 906–08; McCree, *supra* note 2, at 256 ("Concepts of federalism established by the Constitution have been held to require that state court rulings be considered determinative of state law").

Lillich & Mundy, *supra* note 2, suggests another alternative reason for binding effect—full faith and credit. *Id.* at 907–08.

the Governor, Senate or House of Representatives." Maine Const. art. 6, § 3. The Constitution of New Hampshire provides:

"Each branch of the legislature as well as the governor and council shall have authority to require the opinions of the justices of the supreme court upon important questions of law and upon solemn occasions." New Hampshire Const. Pt. 2, art. 74.

The instant case does not deal specifically with the ability of the legislature or the executive branch to request advisory opinions of this Court, but in view of some of the authorities cited in the majority opinion, I deem it necessary to express my view. In my judgment, any such purported legislative authorization or requirement of advisory opinions by this Court would be unconstitutional as an invasion of the inherent power of this Court. Idaho Const. art. 2, § 1, art. 5, § 13.

BISTLINE, Justice, dissenting.

That the Court today upholds the constitutionality of its own self-promulgated rule will not surprise those members of the bar who have observed the ease with which the Court has in recent years on a rather wholesale scale enacted new rules and modifications to and amendments of old rules. My own recollection does not tell me that there was even any discussion of constitutionality when the subject rule came into being.

While it is flattering to be asked by an Idaho federal court to tell that court what the law is in the state of Idaho, there is nothing in the Idaho Constitution which authorizes this Court or any of the district courts of Idaho to give such advisory opinions, and, advisory is exactly what they are, and no more than that. That the federal district courts apparently will accept such opinions and apply them in pending litigation does not alter the fact that this Court's activity transcends constitutional limits.

The most disturbing aspect of the situation is the Court's willingness to bypass that article of our Constitution which declares the procedure for amending the Constitution, when deemed necessary or beneficial. Unlike amending the Constitution of the United States, it is not difficult to amend Idaho's Constitution—as witnessed by the people's ready acceptance of amendments proposed to them by the legislature at the 1982 General Election last year. The Court cannot in good conscience examine our Idaho Constitution and statehood history of almost 100 years and maintain that the framers of the Constitution envisioned that this Court was, sub silentio, cloaked with authority to gratuitously render advisory opinions to federal district courts. I do not argue that it might not be beneficial to have such a procedure, but I do maintain that this Court assumes too much in promulgating a rule which supplants the functions of the article pertaining to the amendments of our Constitution. The Court today would better serve the saving of some semblance of constitutional order were it to simply accept the persuasion of the Utah Court—which faced a similar question—rather than indulge in nit-picking around that court's opinion. The Court would do better to follow the persuasion of an earlier Idaho Court opinion, *Neil v. Public Utilities Commission*, 32 Idaho 44, 52, 178 P. 271, 273 (1919), which stated that "[t]he jurisdiction of this court is fixed by the constitution . . . ." This decision was handed down at a time when this Court was comprised of justices who were not in time so far distant from the constitutional convention in 1889. It must be remembered that at that convention there was far more than a sprinkling of men learned in the law, and logically far more conversant with the separation of state and federal systems of government. A teaching in first year law school is that the diversity of the federal courts was created for a purpose. Now, concededly that purpose may have been to circumvent prejudice which foreign litigants might encounter at the hands of local juries, but at the same time the purpose may have been aimed at local judges. Whatever the underlying motive for creating diversity jurisdiction, the fact remains that it was creat-

ed, it is still with us, and thereunder, federal courts sitting on Idaho diversity cases properly apply Idaho law as it has been declared by this Court, and where it has not, then the federal courts in Idaho should apply that which is divined to be Idaho law. In my view, this is what diversity jurisdiction entails. On the other hand, true diversity jurisdiction is to a large extent nullified when a diversity litigant who has opted for the federal courts rather than a state court thereafter discovers that the federal court has temporarily shelved the litigation while the federal court shifts to a state court the burden of deciding an issue of law which may not have been theretofore passed upon in the state court system.

The rule not only is constitutionally infirm, but is plagued with economic frailities as well. Federal litigation will come to a standstill while this Court gratuitously absorbs into its already over-crowded calendar one more case which it will eventually decide—while at the same time holding back in the pipeline a case which is legitimately in this Court. The economic suffering of the rule is thus twofold—delay in the federal litigation, and delay occasioned to some case which is rightfully before this Court in the exercise of its original jurisdiction or its appellate jurisdiction. If this Court has any jurisdiction other than that, I am unable to discern it from the Idaho Constitution.

Philosophically, I am not persuaded that the Constitution can be so lightly taken as the majority today so views it. It has been an experience of man-kind that the money goes where the talent is. Idaho is blessed with an excellent federal judiciary, all members of which have been admitted to the Idaho Bar and who, prior to accepting federal bench appointments, made active and distinctive contributions to the Idaho judicial system. To my knowledge, however, no member of the Idaho federal judiciary has ever sought office on this Court, which is not to say that each of our five federal judges officed in Boise do not have the qualifications. There may be some rea-

son why those five judges—whose total years of experience in Idaho law exceed the total of the five members who comprise this Court—cannot, when presented with a question of Idaho law thought to have not been previously decided, sit down together and declare that which they in their wisdom and years of experience determine to be Idaho law. If there is such a reason, I am not aware of it, other than that Judge Anderson, who sits on the bench of the Ninth Circuit Court of Appeals, might for that reason not deign to engage in such a conference or discussion. It could be said, too, that there is no precedent for such a procedure, but it cannot be gainsaid that there was no Idaho precedent for the Court's rule which is today under fire. As a practical matter, based on rumblings, rumors, and reports, one can be certain that there are many trial practitioners and trial judges in Idaho who would have preferred that *Chandler Supply Co., Inc. v. City of Boise,* 104 Idaho 480, 660 P.2d 1323 (1983), had been decided somewhere other than in the Idaho Supreme Court and who, for that very reason, can not be all enthralled at having questions involving interpretation of Idaho statutory law shifted from the federal system into the state system. If there be a science known as jurisprudence, and I have ever maintained that it is impossible to perform as a trial judge or trial attorney without such a science, some are saying that that science is at low ebb in our Idaho system, and most, I think, would hesitate to visit this condition upon the federal system. Constitutionally it cannot be done.