791 P.2d 410

David R. MEAD, Chairman, Fred E. Marienau, Ronald V. Harlow, Donna L. Parsons, Wylla D. Barsness, Robert C. Stanton, and Maureen A. Finnerty, in their official capacity as the Idaho Board of Health and Welfare, Applicants,

v.

W. Bruce ARNELL, Director of the District VII Health Department and J. Albert Laird, Board Member, Chairman, and in his representative and official capacity as the Board of the District VII Health Department, and Tom Boyd, Representative and Speaker in his official capacity as the presiding officer of the House of Representatives of the Centennial Idaho Legislature, and Michael D. Crapo, Senator and President Pro Tem in his official capacity as the presiding officer of the Centennial Idaho Legislature, and as the official representatives of the Idaho Legislature, Respondents.

No. 18231.

Supreme Court of Idaho.

March 13, 1990.

Rehearing Denied June 4, 1990.

Jim Jones, Idaho Atty. Gen., and Michael R. DeAngelo, Deputy Atty. Gen., Boise, for applicants. Michael R. DeAngelo, argued.

Hopkins, French, Crockett, Springer & Loopes, Idaho Falls, for respondents, Arnell, et al. Gregory L. Crockett, argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents, Boyd, et al. Patrick J. Kole, argued.

McDEVITT, Justice.

The issues presented to this Court by this petition are issues that have been much debated; and in support of and in opposition to each side of this argument learned scholars and professors have set pen.[1]

On each side of this issue are arrayed knowledgeable and intelligent individuals who argue that a decision following one course would result in the usurpation and a disruption, if not dislocation, of the function of the executive department of government and create instability in place of regulatory certainty. On the other side of the issue the argument persists that the representatives elected directly by the people are those who should ultimately determine the nature and quality of regulations insofar as whether or not they reflect the will of the legislature of the state of Idaho; and a decision contrary to the arguments of this faction would result in an ever burgeoning executive power not contemplated, provided for or desired by the people. All presenting arguments on this issue are agreed that however this Court might rule, if contrary to their expressed positions, the Court will be doing violence to the Constitution of the state of Idaho. Into this thicket this Court has been invited.

On October 15, 1985, applicants, the Idaho Board of Health and Welfare, adopted rules and regulations for individual and subsurface sewage disposal systems, IDA-PA 16.01.3001–999 (hereinafter referred to

---

1. *Legislative Review of Agency Rules in the Post–CHADHA Era,* 49 Ohio St.L.J. 251 (1988); Doyle, *Administrative Law and the Legal Order: A Case Study,* University of Washington Abstract.

as the 1985 Rules). The 1985 Rules were promulgated pursuant to Idaho Code tit. 39, ch. 1, after substantial public testimony and written comment at three public hearings. The official testimony at all three hearings introduced the background of the previous regulations (ratified by the Board in 1978) and explained that the Board's 1978 regulations were based on seventy-year-old criteria that would allow system failures and pose a threat to water quality and public health. It was argued the regulations needed to be revised to follow the latest pollution prevention techniques. The 1985 Rules were duly adopted by the Idaho Board of Health and Welfare.

The Board issued more than 11,000 permits to private citizens and business entities in order to comply with the 1985 Rules. Then, during the 1989 legislative session, the House of Representatives and the Senate of the Idaho Legislature adopted House Concurrent Resolution 29 (HCR–29), which "rejected, declared null and void and of no force and effect" the 1985 Rules. This action was taken in reliance upon the provisions of I.C. § 67–5218 as amended in 1985. Additionally, HCR–29 instructed the Board of Health and Welfare "to promulgate the rules and regulations relating to Individual/Subsurface Sewage Disposal Systems that were in effect prior to October 15, 1985, and those rules shall be deemed to be

in full force and effect," and to "begin procedures under the Administrative Procedures Act to promulgate rules and regulations relating to Individual/Subsurface Sewage Disposal Systems taking into account site specific factors such as climate, depth of the water table, where the systems will be installed, monetary hardships and other relevant factors."

District VII has independently determined to follow HCR–29 until such time as the judicial system determines the resolution unconstitutional, and is ignoring the 1985 Rules. The Board of Health and Welfare has refused to comply with HCR–29 and now requests that this Court issue writs of prohibition and mandate to the legislature and District VII that will, in effect, command their acquiescence in the Board's 1985 rules. The Board urges that the means the Court should take to reach this end is to hold I.C. § 67–5218 and HCR–29 unconstitutional.

The issue before the Court is whether the Idaho Legislature may rescind the rules promulgated by an executive department board or agency by concurrent resolution pursuant to I.C. § 67–5218. A number of jurisdictions have dealt with variations of the issue before us. In each case, differing issues, constitutional provisions, or statutes preclude our adoption of them as clear precedent.[2]

---

2. *General Assembly of New Jersey v. Byrne,* 90 N.J. 376, 448 A.2d 438 (1982) (statute requiring submission to legislature of *every* administrative rule, and allowing veto of any rule by concurrent resolution of both houses):

> [Under the challenged provision] the legislature need not explain its reasons for any veto decision. Its action therefore leaves the agency with no guidance on how to enforce the law.

*Byrne,* 448 A.2d at 443.

> Our holding here does not foreclose all legislative veto provisions. Where legislative action is necessary to further a statutory scheme requiring cooperation between the two branches, and such action offers no substantial potential to interfere with exclusive executive functions or alter the statute's purposes, legislative veto power can pass constitutional muster.

*Byrne,* 448 A.2d at 448.

*State v. Kansas House of Representatives,* 236 Kan. 45, 687 P.2d 622 (1984) (based on Kansas precedent establishing a case by case analysis

based on four factors: 1) essential nature of the powers being exercised; 2) degree of control by one department over another; 3) objective sought to be attained by the legislature; 4) practical result of the blending powers as shown by actual experience over a period of time.)

*Opinion of the Justices,* 121 N.H. 552, 431 A.2d 783 (1981) (bill under consideration requiring agencies to submit proposed rules for legislative committee approval before filing notice of intended action):

> [W]here the Constitution explicitly says that the legislature requires a quorum to act, legislative veto by a small group of legislators "cannot fairly be said to represent the 'legislative will.'"

*Opinion of the Justices* (New Hampshire), 431 A.2d at 788.

*Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981) (statute provided for legislative oversight by committee, with power in full legislature to override committee determination by concurrent resolution or by inertia. Statute did not require any review by the full legislature.)

The Court's position in this case is not unlike that described by Chief Justice Marshall in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257, 404 (1821):

> The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do, is to exercise our best judgment, and conscientiously to perform our duty.

Justice Bistline in *Holly Care Center v. State Dep't of Emp.,* 110 Idaho 76, 714 P.2d 45 (1976), anticipated that one day this question would reach this Court when he said:

> Not before us, and left for another day and another case, is the legal effect of action by the legislature in rejecting an administrative rule. The legal efficacy of the legislative veto raises potentially serious constitutional issues, involving among others that pertaining to the presentment of bills and the fundamental principle of separation of powers.

This Court, mindful of Justice Marshall's admonition, addresses the issues presented to it by the applicants and respondents.

Specifically, the issues before this Court are as follows:

1. Whether the Idaho Supreme Court can and should exercise original jurisdiction to issue writs of mandate, prohibition and a declaratory judgment in mandamus?

2. Whether I.C. § 67–5218 and HCR–29 violate the Idaho Constitution's legislative enactment and presentment clauses in article 3, §§ 1 and 15, and article 4, § 10, or the principle of separation of powers contained in article 2, § 1?

3. Whether District VII must comply with the Board of Health and Welfare's 1985 Rules?

## I. SUPREME COURT'S JURISDICTION

We exercise this Court's original jurisdiction and review this case under the power granted by article 5, § 9 of the Idaho Constitution. Article 5, § 9 specifically states that the Supreme Court has "original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." We also note that the Idaho Supreme Court's original jurisdiction is limited only by article 2, § 1 of the Idaho Constitution and its own Court Rules. Article 5, § 13 of the Idaho Constitution provides that the legislature shall "regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, ..." The principle that neither the legislature nor the executive can in any way regulate or alter the Supreme Court's jurisdiction is basic to the doctrine of separation of powers. Idaho Constitution, art. 2, § 1. Even though legislative authorization is not necessary, I.C. § 10–1201 authorizes this Court to issue declaratory judgments in appropriate situations.

The procedural guidelines pertaining to special writs is delineated in Idaho Appellate Rule 43. Regarding the extent of the Supreme Court's original appellate jurisdiction, I.A.R. 5 provides that: "Any person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction, and such application shall be made as provided in these rules." Once this Court has asserted its original jurisdiction, it may issue writs

*State v. A.L.I.V.E. Voluntary,* Alaska, 606 P.2d 769 (1980) (Alaska Constitutional Convention had dealt specifically with legislative veto):

> [T]he express provision in the Alaska Constitution of two specific legislative veto mechanisms supports our view that no implied power to veto agency regulations by informal legislative action exists.

*A.L.I.V.E.* at 774.

**664**

of mandamus and/or prohibition. *See also* I.C. §§ 7–301–7–303, 7–401–7–404.

In the instant case, the Board is requesting that the writ of prohibition be issued to nullify legislative action taken pursuant to I.C. § 67–5218, and that the writ of mandate be issued to District VII. Our disposition of the constitutionality of I.C. § 67–5218 will be limited to a simple declaration of its constitutionality or lack thereof.

These limits do not apply, however, to our determination of whether District VII must comply with the 1985 Rules.

## II. SEPARATION OF POWERS

### A. EXECUTIVE POWER

■ Article 2, § 1 of the Idaho Constitution provides for the separation of powers among the three branches of Idaho's government. Article 3, § 1 provides that the power to pass bills is vested in the legislature. Article 3, § 15 provides that, "[n]o law shall be passed except by bill, ...." Read together, these three constitutional provisions stand for the proposition that, of Idaho's three branches of government, only the legislature has the power to make "law." *See State v. Nelson*, 36 Idaho 713, 213 P. 358 (1923); *State v. Purcell*, 39 Idaho 642, 228 P. 796 (1924); *Suppiger v. Enking*, 60 Idaho 292, 91 P.2d 362 (1939); *Board of County Com'rs of Twin Falls County v. Idaho Health Fac. Auth.*, 96 Idaho 498, 531 P.2d 588 (1975).

■ While the power to make law lies exclusively within the province of the legislature, (Idaho Constitution, art. 3 §§ 1, 15) "the legislature may constitutionally leave to administrative agencies the selection of the means and the time and place of the execution of the legislative purpose, and to that end may prescribe suitable rules and regulations." *State v. Taylor*, 58 Idaho 656, 664, 78 P.2d 125, 128 (1938). Administrative agencies do this by enacting rules and regulations. *See* Idaho Code tit. 67, ch. 52. However, while these rules and regulations may be given the "force and effect of law," they do not rise to the level of statutory law. Only the legislature can

make law. *Idaho Power v. Blomquist*, 26 Idaho 222, 141 P. 1083 (1914); *State v. Nelson*, 36 Idaho 713, 213 P. 358 (1923); *overruled on other grounds, Greater Boise Aud. v. Royal Inn of Boise*, 106 Idaho 884, 684 P.2d 286 (1984); *State v. Purcell*, 39 Idaho 642, 228 P. 796 (1924); *Marshall v. Department of Agric.*, 44 Idaho 440, 258 P. 171 (1927); *Chambers v. McCollum*, 47 Idaho 74, 272 P. 707 (1928); *State v. Heitz*, 72 Idaho 107, 238 P.2d 439 (1951); *Idaho Savs. & Loan Ass'n v. Roden*, 82 Idaho 128, 350 P.2d 225 (1960); *Boise Redevelopment Agency v. Yick Kong Corp.*, 94 Idaho 876, 499 P.2d 575 (1972); *Board of County Com'rs of Twin Falls County v. Idaho Health Fac. Auth.*, 96 Idaho 498, 531 P.2d 588 (1975); and *Kerner v. Johnson*, 99 Idaho 433, 583 P.2d 360 (1978).

The Constitution of the state of Idaho and this Court, through its interpretation in the cases cited herein, have clearly established that the legislative power was vested exclusively in the legislature; that a statute or law should be enacted only by a bill, passed by both houses of the legislature and signed by the governor, or rejected by the governor, passed over the veto by the legislature, or having become law without the governor's signature as provided in the Constitution. The next question that early on developed was: What was the nature, constitutional basis for and effect of the legislature delegating certain rule making authority to the executive department?

This Court, speaking through a number of eminent jurists, has rather consistently defined the nature of that which results from rules and regulations adopted by executive agencies by virtue of authority delegated to such agencies from the legislature.

Sullivan, J., speaking for the Court in *Idaho Power Co. v. Blomquist*, 26 Idaho 222, 141 P. 1083 (1914), described the authority delegated by legislative act by quoting language from the United States Supreme Court contained in *Interstate Commerce Comm'n v. Goodrich Transit Co.*, 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729 (1912):

[T]he congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the congress.

Continuing, the Court quoted *Field v. Clark*, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892), as follows:

"The true distinction," as Judge Ranney, speaking for the Supreme Court of Ohio, has well said, "is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

William A. Lee, J., spoke for the Court in *State v. Purcell*, 39 Idaho 642, 649, 228 P. 796, 797 (1924), as follows: "One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority."

■ These and the earlier cited cases clearly pronounce that what the legislature delegated was not a legislative or law making authority, but, an authority to make rules or regulations.

In the case of *Marshall v. Department of Agric.*, 44 Idaho 440, 258 P. 171 (1927), Givens, J., held that: "the authority granted the Department of Agriculture ... was not a delegation of legislative authority."

The opinion in *Chambers v. McCollum*, 47 Idaho 74, 272 P. 707 (1928), was authored by Budge, J. There the Court was presented with a question of the constitutionality of the Idaho Forestry Law, and it described the nature of boards and commissions operating under legislatively delegated rule making authority as follows: "Boards and commissions of this character do not exercise any of the powers delegated by the legislature. They do not make

any laws." Justice Budge went on to quote from the language of the Kansas case *Schaake v. Dolley*, 85 Kan. 598, 118 P. 80 (1911), to enunciate the reason that this delegation of rule making authority had evolved:

It has been well said that to deny to the Legislature the right to delegate the power to determine some fact or state of thing upon which the enforcement of an enactment depends would stop the wheels of government and bring about confusion, if not paralysis, in the conduct of the public business.

In all, save two, decisions of this Court on this issue, the Court has consistently described rules and regulations adopted by agencies pursuant to legislative delegation as at the most having the "force and effect of law." The Court has never, save in *dictum* in the case of *Higginson v. Westergard*, 100 Idaho 687, 690, 604 P.2d 51, 54 (1979), referred to in *dictum* in *Holly Care Center v. Department of Emp.* by two Justices of this Court, described any rule or regulation as being equal in dignity or status to statutory law. *McFall v. Arkoosh*, 37 Idaho 243, 215 P. 978 (1923); *State v. Heitz*, 72 Idaho 107, 238 P.2d 439 (1951); *Idaho Savs. & Loan Ass'n v. Roden*, 82 Idaho 128, 350 P.2d 225 (1960); *Board of County Commrs. of Twin Falls County v. Idaho Health Facilities Auth.*, 96 Idaho 498, 531 P.2d 588 (1975); *Kerner v. Johnson*, 99 Idaho 433, 583 P.2d 360 (1978).

Therefore, although this Court has frequently described the rules and regulations in different words and has sometimes ascribed to them an administrative character as well as a legislatively conferred quality, *State v. Heitz*, 72 Idaho 107, 112, 238 P.2d 439, we have consistently found the origin of this rule making capacity in a delegation from the legislature not a constitutional grant of power to the executive and have consistently held such rules or regulations promulgated thereunder to be less than the equivalent of statutory law.

The Supreme Court of the United States likewise wrestled for a period of time with the nature of these regulations in *United*

*States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1910), wherein the Court, quoting from an even earlier opinion by Chief Justice Marshall, stated:

"[C]ongress may certainly delegate to others powers which the legislature may rightfully exercise itself." What were these nonlegislative powers that congress *could* exercise, but which might also be delegated to others was not determined, for he said: "The line has not been exactly drawn which separates these important subjects which *must* be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act upon such general provisions to fill up the details." (Emphasis in original.)

*United States v. Grimaud,* 31 S.Ct. at 483.

In the same case Justice Lamar, delivering the opinion of the Court, further described the nature and dignity of rules and regulations as follows:

By whatever name they are called, they refer to matters of local management and local police. *Brodbine v. Revere,* 182 Mass. 598, 66 N.E. 607 [1903]. They are not "of a legislative character in the highest sense of the term; and as an owner may delegate to his principal agent the right to employ subordinates, giving to them a limited discretion, so it would seem that Congress might rightfully intrust to the local legislature (authorities) the determination of minor matters." *Butte City Water Co. v. Baker,* 196 U.S. 119, 25 S.Ct. 211 [49 L.Ed. 409] (1905).

*United States v. Grimaud,* 31 S.Ct. at 483.

The courts of other jurisdictions seem likewise to have given a lesser dignity than statutory law to rules and regulations. The Court of Appeals of Kansas held that:

Although administrative regulations and rules may be promulgated to implement statutes and the exercise of delegated authority, and duly adopted administrative regulations and rules have the force of law, administrative regulations and rules do not supplant statutory law nor do they preempt judicial statutory interpretation.

*Peoples Natural Gas v. State Corp. Comm'r,* 7 Kan.App.2d 519, 644 P.2d 999, 1006, *review denied,* (1982).

These long held principles of constitutional jurisprudence were encapsulated in Idaho's Administrative Procedure Act of 1965[3] (APA). The APA governs the procedures by which administrative agencies adopt rules. Its validity was explicitly reinforced in 1972 when article 4, § 20 of the Idaho Constitution was ratified. This provision reads:

All executive and administrative officers, agencies, and instrumentalities of the executive department of the state and their respective functions, powers, and duties, except for the office of governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general and superintendent of public instruction, *shall* be allocated by law among and within not more than twenty (20) departments by no later than January 1, 1975. Subsequently, all new powers or functions shall be assigned to departments, divisions, sections or units in such a manner as will tend to provide an orderly arrangement in the administrative organization of state government. (Emphasis added.)

In addition to being a proper delegation of power under article 2, § 1, the APA was created in a manner consistent with the enactment clause of article 3, § 1, and the presentment clause of article 4, § 10 of the Idaho Constitution. Section 67-5218 of the APA was likewise properly enacted, presented to and signed by the Governor. It was properly amended in 1985. Thus, both the APA and § 67-5218 were created in the constitutionally mandated manner. *See Holly Care Center v. Department of Emp.,* 110 Idaho 76, 714 P.2d 45 (1986).[4]

---

**3.** Title 67, chapter 52 of the Idaho Code.

**4.** This holding in *Holly Care* was concurred in by two justices with a third justice concurring in the result.

HCR–29 is not a law and need not comply with article 4, § 10 of the Idaho Constitution. *Balderston v. Brady,* 17 Idaho 567, 107 P. 493 (1910); *Griffith v. Van Deusen,* 31 Idaho 136, 169 P. 929 (1917).

The Board argues that by granting the legislature the power to reject administrative rules, I.C. § 67–5218 violates the doctrine of separation of powers as provided in article 2, § 1 of the Idaho Constitution. It does so, the Board urges, by allowing the legislature to impinge on the executive department's constitutionally mandated duty to execute the laws of this state.

The Board's argument is misapplied to this case. Here, the legislative action has not invalidated the executive department's "execution of law." Such would be the case, for instance, if the legislature had passed a concurrent resolution to prevent the Attorney General from taking legal action for some violation of a statute. Enforcing the law of this state is a constitutionally mandated executive department function resting in the office of the Attorney General. In such a case no *delegation* would be involved. Conversely, in this case, the Board's rule making power comes from a legislative delegation. Rule making that comes from a legislative delegation of power is neither the legal nor functional equivalent of constitutional power. It is not constitutionally mandated; rather it comes to the executive department through delegation from the legislature. This Court, as noted, has consistently found the executive rule making authority to be rooted in a legislative delegation, not a power constitutionally granted to the executive.

The action of this Court over the last fifty years so closely parallels that of the United States Supreme Court in approving delegation of rule making authority to the executive that the arguments of Justice White dissenting in *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) [5], are directly applicable and state the case far more cogently than could this author:

Congress is faced with a Hobson's choice: either to refrain from delegating the necessary authority, leaving itself with a hopeless task of writing laws with the requisite specificity to cover endless special circumstances across the entire policy landscape, or in the alternative, to abdicate its law-making function to the Executive Branch and independent agencies. To choose the former leaves major national problems unresolved; to opt for the latter risks unaccountable policymaking by those not elected to fill that role.

*Chadha,* 103 S.Ct. at 2793.

The power to exercise a legislative veto is not the power to write a new law without bicameral approval or Presidential consideration. The veto must be authorized by statute and may only negative what an Executive department or independent agency has proposed. On its face, the legislative veto no more allows one House of Congress to make law than does the Presidential veto confer such power upon the President.

*Chadha,* 103 S.Ct. at 2799.

If Congress may delegate lawmaking power to independent and Executive agencies, it is most difficult to understand Art. I as prohibiting Congress from also reserving a check on legislative power for itself. Absent the veto, the agencies receiving delegations of legislative or quasi-legislative power may issue regulations having the force of law without bicameral approval and without the President's signature. It is thus not apparent why the reservation of a veto over the exercise of that legislative power must be subject to a more exacting test. In both cases, it is enough that the initial statutory authorizations comply with the Art. 1 requirements.

*Chadha,* 103 S.Ct. at 2802.

Under the Court's analysis, the Executive Branch and the independent agencies

---

**5.** The United States Supreme Court in *I.N.S. v. Chadha,* decided that the "legislative veto" in that case was unconstitutional on the basis of Article I, § 1; § 7, clause 2; and § 7, clause 3 of the United States Constitution; and the fact that what was being considered was a one house "veto."

may make rules with the effect of law while Congress, in whom the Framers confided the legislative power, Art. 1, § 1, may not exercise a veto which precludes such rules from having operative force. If the effective functioning of a complex modern government requires the delegation of vast authority which, by virtue of its breadth, is legislative or "quasi-legislative" in character, I cannot accept that Art. 1—which is, after all the source of the non-delegation doctrine—should forbid Congress to qualify that grant with a legislative veto.

*Chadha,* 103 S.Ct. at 2804.

Under article I, § 7, clause 3 of the United States Constitution, every order, resolution, or vote which may require the concurrence of the Senate and House of Representatives (except on a question of adjournment) must be presented to the President of the United States; and before the same shall take effect, shall be approved by the President, or being disapproved, must be repassed by two thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill.

The Constitution of the state of Idaho is much more limited. Article 4, § 10 provides:

> § 10. Veto power.—Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if do not approve, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon its journals and proceed to reconsider the same bill. If then two-thirds (⅔) of the members present agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered: and if approved by two-thirds (⅔) of the members present in that house, it shall become a law, notwithstanding the objections of the governor. In all such cases the vote of each house shall be determined by yeas and nays, to be entered on the journal. Any bill

which shall not be returned by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the legislature shall, by adjournment, prevent its return, in which case it shall be filed, with his objections, in the office of the secretary of state within ten (10) days after such adjournment (Sundays excepted) or become a law.

Applicant argues that since regulations have the "force and effect of law" they can only be rejected by something of "equal dignity." The regulations that have the "force and effect of law" did not come through legislative enactment directly, but were adopted by administrators by authority of the legislature embodied in a statute. HCR–29 likewise was adopted pursuant to statutory authority. Idaho Code § 67–5218 confers that authority.

Applicant further suggests that a great mischief could be perpetuated under I.C. § 67–5218 by the legislature passing a bill without provisions that would invite a governor's veto and later amending regulations enacted pursuant to that bill to include the omitted provision, thus evading article 4, § 10 of the Idaho Constitution.

We deal here only with the rejection of an administrative regulation. The perceived mischief is not present, or possible, in rejection of a rule or regulation. This holding should not be deemed to apply to any situations, set of facts or possible application other than the rejection of an administrative rule or regulation that has been promulgated pursuant to legislatively delegated authority. The use of a Concurrent Resolution, as provided for in I.C. § 67–5218, does not bestow any greater dignity, power or authority on a Concurrent Resolution other than that provided in I.C. § 67–5218 for rejecting a rule or regulation.

The condition enunciated in I.C. § 67–5218 is that the rules which the legislature have delegated the authority to promulgate comply with the legislative intent of the enabling statute. This conditioned grant of authority is consistent with

the principle of separation of powers as set forth in article 2, § 1 of the Idaho Constitution as these acts relate to the executive department.

## B. JUDICIAL POWER

It is further argued that I.C. § 67–5218 violates the principle of separation of powers expressed in article 2, § 1 of the Idaho Constitution, as permitting the exercise of an exclusively judicial function by the legislature, empowering it to review and interpret rules and regulations and determine if said rules and regulations comply with the legislative intent of the enabling statute.

 This Court is established as a co-equal department of government under the terms of article 2, § 1 of the Constitution of the state of Idaho. Article 5, §§ 2 and 13, of the Idaho Constitution vest all judicial power and jurisdiction in this Court. These provisions are clear that it is the duty of the Court to interpret the law. *In re Lockman*, 18 Idaho 465, 110 P. 253 (1910); *In re Speer*, 53 Idaho 293, 23 P.2d 239 (1933); *State v. Barnes*, 55 Idaho 578, 45 P.2d 293 (1935); *Scott v. Gossett*, 66 Idaho 329, 158 P.2d 804 (1945); *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971); *Holly Care Center v. Department of Emp.*, 110 Idaho 76, 714 P.2d 45 (1986).

While mindful of the prerogatives of this Court, and remaining ever vigilant in the defense thereof, this Court has consistently acted to protect against encroachment of one department of government on another. *State v. McCoy*, 94 Idaho 236, 240–41, 486 P.2d 247, 251–52 (1971). This Court also must be mindful of the admonition of Justice Jackson concurring in the judgment and opinion of the United States Supreme Court in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952):

> The tendency is strong to emphasize transient results upon policies—such as wages or stabilization—and lose sight of enduring consequences upon the balanced power structure of our Republic.
>
> A judge, like an executive adviser, may be surprised at the poverty of really useful and unambiguous authority applicable to concrete problems of executive power as they actually present themselves. Just what our forefathers did envision, or would have envisioned had they foreseen modern conditions, must be divined from materials almost as enigmatic as the dreams Joseph was called upon to interpret for Pharaoh. A century and a half of partisan debate and scholarly speculation yields no net result but only supplies more or less apt quotations from respected sources on each side of any question. They largely cancel each other. And court decisions are indecisive because of the judicial practice of dealing with the largest questions in the most narrow way.
>
> The actual art of governing under our Constitution does not and cannot conform to judicial definitions of the power of any of its branches based on isolated clauses or even single Articles torn from context. While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity. (Footnotes omitted.)

*Youngstown*, 72 S.Ct. at 869–70.

Justice Jackson's observation of "the poverty of really useful and unambiguous authority" remains true.

The Constitution gives both the power and a clear directive to this Court to interpret the law and to determine what administrative rules "do or do not conflict with statutory law." *Holly Care Center v. Department of Emp.*, 110 Idaho 76, 82, 714 P.2d 45 (1986). This Court must determine the effect of the legislature, by statute, providing for "legislative review of administrative rules (and to empower) the legislature to reject, amend or modify such rules by resolution." S.B. No. 1086, as amended, 1969 Idaho Sess. Laws, ch. 48, p. 125–26.

More particularly stated, the determination must be made if the legislature, acting under the authority granted pursuant to

I.C. § 67–5218, is exercising powers properly belonging to the judicial department.

The conflict to be resolved is between the judiciary's constitutional authority to determine whether an administrative rule is in conformance with the enabling statute, and the legislature's statutory entitlement to determine if an administrative rule or regulation fails to reflect the legislative intent contained in the enabling statute.

■ Idaho Code § 67–5218 makes clear that the legislature has reserved unto itself the power to reject an administrative rule or regulation as part of the statutory process. This reservation is not an intrusion on the judiciary's constitutional powers.

In sum, I.C. § 67–5218 was created in the constitutionally mandated manner and is substantively proper under the terms of article 2, § 1, in that it does not permit the exercise of power by the legislature in rejecting rules or regulations properly belonging to the executive or the judiciary. Thus, we declare I.C. § 67–5218, as to rescinding rules and regulations pursuant thereto, constitutional. However, we do not suggest that all such legislative statutory reservations or rejections of rules or regulations pursuant thereto are necessarily consistent with the separation of powers principles.

We note that this holding is narrow and does not vitiate this Court's prior opinion in *Holly Care v. Department of Emp.*, 110 Idaho at 76, 714 P.2d 45 (1986). *Holly Care* held that the legislature's affirmation (by inaction) of an agency rule was not binding on this Court's determination of whether the rule conforms with the enabling legislation but left for another day determination of the question of legislative rejection of a rule.

### III. HCR–29—COMPLIANCE WITH I.C. § 67–5218

In this case, we are not presented with the question of whether the Board's 1985 rules conformed with the enabling legislation of I.C. tit. 39, ch. 1, but whether the legislature's actions comply with I.C. § 67–5218. To determine this, we must first examine the relevant language of the text of I.C. § 67–5218. Idaho Code § 67–5218 contains two passages that have a direct bearing on this question. The first passage reads:

If the committee to which any rule shall have been referred, or any member of the legislature, shall be of the opinion that such rule is violative of the legislative intent of the statute under which such rule was made, *or*, if any rule previously promulgated and reviewed by the legislature shall be deemed violative of the legislative intent of the statute under which such rule was made, a concurrent resolution may be adopted rejecting, amending or modifying the same. (Emphasis added.)

The second provision reads:

The agency shall be responsible for implementing legislative intent as expressed in the concurrent resolution, including, as appropriate, the reinstatement of the prior rule, if any, in the case of legislative rejection of the new rule, or the incorporation of any legislative amendments to the new rule.

■ We read these passages as creating threshold requirements that the legislature definitively express that the rule being rejected is contrary to legislative intent.

HCR–29 was adopted as follows:

IN THE HOUSE OF REPRESENTATIVES HOUSE CONCURRENT RESOLUTION NO. 29 BY REVENUE AND TAXATION COMMITTEE

A CONCURRENT RESOLUTION STATING LEGISLATIVE FINDINGS AND REJECTING CERTAIN RULES OF THE BOARD OF HEALTH AND WELFARE RELATING TO INDIVIDUAL/SUBSURFACE SEWAGE DISPOSAL SYSTEMS.

Be It Resolved by the Legislature of the State of Idaho:

WHEREAS, the Legislature is vested with authority to modify, reject or amend executive agency rules and regulations under the provisions of Section 67–5218, Idaho Code; and

WHEREAS, it is the finding of the Legislature that certain rules of the Board of Health and Welfare, effective October 15, 1985, relating to Individual/Subsurface Sewage Disposal Systems, should be rejected; and

WHEREAS, in promulgating the rules relating to Individual/Subsurface Sewage Disposal Systems, the Board of Health and Welfare did not sufficiently identify risks related to the subject and did not receive sufficient public input regarding the content of the rules; and

WHEREAS, it appears the rules and regulations relating to Individual/Subsurface Sewage Disposal Systems are designed for areas with milder climates than certain parts of Idaho; and

WHEREAS, certain district health departments improperly interpreted the rules relating to Individual/Subsurface Sewage Disposal Systems giving the public a false sense of security that they were complying with the rules; and

WHEREAS, the Board of Health and Welfare appeared to not consider such site specific factors as climate, depth of the water table or monetary hardship when promulgating the rules for Individual/Subsurface Sewage Disposal Systems effective October 15, 1985.

NOW, THEREFORE, BE IT RESOLVED by the members of the First Regular Session of the Centennial Idaho Legislature, the House of Representatives and the Senate concurring therein, that Idaho Department of Health and Welfare Rules and Regulations Chapter 3, Title 1, Rules and Regulations for Individual/Subsurface Sewage Disposal Systems (IDAPA 16.01.3001 through 16.01.-3999) be and the same are hereby rejected, declared null and void and of no force and effect.

BE IT FURTHER RESOLVED that the Board of Health and Welfare is instructed to promulgate the rules and regulations relating to Individual/Subsurface Sewage Disposal Systems that were in effect prior to October 15, 1985, and those rules shall be deemed to be in full force and effect.

BE IT FURTHER RESOLVED that the Board of Health and Welfare is hereby instructed to begin procedures under the Administrative Procedures Act to promulgate rules and regulations relating to Individual/Subsurface Sewage Disposal Systems taking into account site specific factors such as climate, depth of the water table, where the systems will be installed, monetary hardships and other relevant factors.

■■■ Conspicuously absent from HCR–29 is any statement that the 1985 regulations are violative of legislative intent. Without such an expression, HCR–29 does not satisfy the requirements of I.C. § 67–5218 and is a nullity.

We do not address the language of HCR–29 declaring "null and void and of no force and effect" the 1985 Rules, nor the direction that the 1978 rules "shall be deemed in full force and effect." Whether those passages attempt to enact laws and thus run afoul of article 4, § 10 of the Idaho Constitution is not decided in this opinion.

[W]hen a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issues. *Poesy v. Bunney,* 98 Idaho 258, 561 P.2d 400 (1977) ("It is well established that a reviewing court will not pass on the constitutionality of a statute unless it is absolutely necessary for a determination of the case." *Citing Swensen v. Buildings, Inc.,* 93 Idaho 466, 463 P.2d 932 (1970); *Nelson v. Boundary County,* 109 Idaho 205, 706 P.2d 94 (Ct.App.1985); "However, we will not review the constitutionality of a statute unless it is absolutely necessary to the decision of a case." *Citing Packard v. Joint School District No. 171,* 104 Idaho 604, 661 P.2d 770 (Ct.App.1983)); *State v. Hightower,* 101 Idaho 749, 757, 620 P.2d 783, 791 (1980). *Accord Nampa Christian Schools Foundation v. State,* 110 Idaho 918, 920, 719 P.2d 1178, 1180 (1986).

*Deonier v. Public Emp. Retirement Bd.,* 114 Idaho 721, 733, 760 P.2d 1137, 1149 (1988) (Bakes, J., dissenting).

## IV. STATUS OF DISTRICT HEALTH BOARD

We are left with the question of whether the Board has the power to require District VII to comply with the 1985 Rules. Respondents argue that the Supreme Court should deny the application for writs of mandamus because there is no controversy ripe for adjudication. We hold that the Board has the power and that this issue is ripe for adjudication.

■ District VII has not promulgated its own rules pursuant to I.C. § 39–416. District VII is attempting to embrace as its own rules the 1978 rules and regulations of the Board. This it cannot do.

■ District VII is mandated, under I.C. § 39–414(1): "[t]o administer and enforce all state and district health laws, regulations and standards." We view this as a mandatory duty.

■ On the adoption of HCR–29, this issue was ripe for adjudication. *State v. Freeman*, 529 F.Supp. 1107 (1981), (*stayed*, 455 U.S. 918, 102 S.Ct. 1272, 71 L.Ed.2d 458) (*vacated*, 459 U.S. 809, 103 S.Ct. 22, 74 L.Ed.2d 39). Thus, District VII has the duty to enforce the Board's 1985 rules.[6]

No costs awarded to any party.

BAKES, C.J., and BOYLE, J., concur.

JOHNSON, Justice, concurring and dissenting.

### I.

INTRODUCTION.

I find much in the opinion of the Court with which I can agree. However, in certain crucial areas, I must depart from what the majority has said.

The majority opinion admirably expresses the principle of separation of powers among the three departments of our state government. It also correctly points out that this Court has jurisdiction to consider the issue presented to us by the Board of Health and Welfare. Nor do I quarrel with the characterization of the rules of state agencies as not being equivalent to statutory law. (Throughout I will use the term "rule" in the sense used in I.C. § 67–5201(7): "any agency statement of general applicability that implements or prescribes law or interprets a statute as the statement applies to the general public." In this sense it encompasses a "regulation.") I also agree with the conclusion that the district boards of health and welfare are required to administer and enforce the rules of the state Board of Health and Welfare and that District VII has the duty to enforce the Board's 1985 rules.

Where I differ from my esteemed colleagues is in their placing the stamp of constitutionality upon the portion of I.C. § 67–5218 that allows the legislature to reject, amend or modify a rule promulgated by a state agency by means of a concurrent resolution stating that the rule violates legislative intent. In my view, this provision violates not only the separation of powers between the legislative and executive departments but also the separation of powers between the legislative and judicial departments.

As I see it, the legislature has the power to authorize, but is not compelled to authorize, an agency to make rules. If the legislature does authorize, it must do so by the enactment of a statute in the constitutionally prescribed fashion. In its authorization the legislature must give the agency adequate guidance as to its intent and purposes so that the agency will be able to

6. I.C. § 39–416, "Regulations adopted by district board—Procedure" states that "[t]he district board by the affirmative vote of a majority of its members may adopt, amend or rescind regulations, rules and standards as it deems necessary to carry out the purposes and provisions of this act ... [and] in a manner conforming to the provisions of chapter 52, title 67, Idaho Code." This provision clearly pertains to regulations adopted by the particular district board pursuant to I.C. § 39–413(2) which empowers the directors "[t]o prescribe such rules and regulations, consistent with the requirements of this chapter, ..." and not to rules and regulations promulgated by the State's Board of Health and Welfare. I.C. § 39–416(4) supports this reading: "This section does not apply to measures adopted in the operation of the district board in its administrative functions and duties, as enumerated in section 39–414, ..."

determine the scope of its authority in making the rules that are authorized.

If there is a challenge that an agency has exceeded or misused the authority given to it by the legislature to make rules, the legislature may amend the statute to redefine the scope of the agency's authority, or it may repeal the authorization altogether. In either case, the legislature must act through legislation enacted in the form and according to the procedures prescribed in our constitution.

If an interested party objects to a rule promulgated by an agency pursuant to authority granted by the legislature, that party may institute an action in a court vested with the necessary jurisdiction to consider the question presented. The court may determine whether the agency exceeded the authority granted to it by the legislature. It is a judicial function to decide whether the agency's rule violated the legislative intent embodied in the statute authorizing the rule making.

Decisions of this Court during the past half century have confirmed these principles. These decisions make it clear to me that allowing the legislature to reject, amend or modify a rule of an administrative agency by concurrent resolution would do violence to the balance the drafters of our constitution intended between the three departments of our government.

## II.

VIOLATION OF THE SEPARATION OF POWERS OF THE LEGISLATIVE AND EXECUTIVE DEPARTMENTS.

In *State v. Taylor*, 58 Idaho 656, 78 P.2d 125 (1938), this Court upheld legislation authorizing the public works commissioner to cooperate with the federal government and local agencies for the construction, improvement and maintenance of secondary or feeder roads in the state. In doing so, we rejected a challenge that the legislature had unconstitutionally delegated its power to make law:

It seems to be an accepted rule of judicial decision that the legislative function has been complied with, where the terms of the statute are sufficiently definite and certain to declare the legislative purpose and the subject matter meant to be covered by the act; and that the Legislature may constitutionally leave to administrative agencies the selection of the means and the time and place of the execution of the legislative purpose, and to that end may prescribe suitable rules and regulations.

*Id.* at 664, 78 P.2d at 128 (citations omitted).

In *State v. Heitz*, 72 Idaho 107, 238 P.2d 439 (1951), this Court upheld the constitutionality of a statute authorizing the commissioner of public works to make regulations reducing the permissible sizes, weights, and speeds of vehicles driven on state highways. In *Heitz* we delineated the scope of legislative power to authorize administrative agencies to make rules:

A legislature, or other law-making body, in enacting a law complete in itself, designed to accomplish the regulation of particular matters falling within its jurisdiction may expressly authorize an administrative commission (in this case the Commissioner of Public Works) within definite limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose, and in so doing, the administrative officer or board so empowered may be given the right to prescribe or vary regulations concerning motor vehicles used on public highways....

A legislative body cannot delegate legislative power to make laws to other body or authority, *State v. Nelson,* 36 Idaho 713, 213 P. 358, but this rule does not preclude conferring upon local subdivisions or administrative officers the power to prescribe or vary regulations concerning motor vehicles used on public highways within definite limits fixed by the legislative body.

Nor are such rules and regulations prescribed by administrative boards where applicable to all persons and authorized by the legislature unconstitutional. Such authority to make rules and

regulations to carry out an express legislative purpose or to effect the operation and enforcement of the same is not exclusively a legislative power, but is administrative in its nature.

72 Idaho at 111–12, 238 P.2d at 441–42 (citations omitted).

The same year that the Administrative Procedure Act (Title 67, Ch. 52, Idaho Code) was enacted by the legislature, *Taylor* and *Heitz* were cited by this Court in *Abbot v. State Tax Commission*, 88 Idaho 200, 398 P.2d 221 (1965), in upholding the authorization given by the legislature to the State Tax Commission to classify property for taxation purposes.

Just a decade ago in *Beker Industries, Inc. v. Georgetown Irrigation District*, 101 Idaho 187, 610 P.2d 546 (1980), this Court held that the director of the Department of Water Resources had not been granted statutory authority to approve an application by the holder of a water right to change the nature of the use of the water right. There, we said: "An administrative agency like [the Department of Water Resources] has only such powers as the statute or ordinance confers." *Id.* at 191, 610 P.2d at 550.

In 1983 we decided a case that involved the attempted use of a concurrent resolution by the legislature to overrule the action of the Water Resources Board, a constitutionally created administrative agency. The constitutional provision that created the Water Resources Board stated:

State water resource agency.—There shall be constituted a Water Resource Agency, composed as the Legislature may now or hereafter prescribe, which shall have power to formulate and implement a state water plan for optimum development of water resources in the public interest; to construct and operate water projects; to issue bonds, without state obligation, to be repaid from revenues of projects; to generate and wholesale hydroelectric power at the site of production; to appropriate public waters as trustee for Agency projects; to acquire, transfer and encumber title to real property for water projects and to have control and administrative authority over state lands required for water projects; all under such laws as may be prescribed by the Legislature.

ID. CONST. art. 15, § 7.

In *Idaho Power Co. v. State*, 104 Idaho 570, 661 P.2d 736 (1983), this Court held unconstitutional the statute by which the legislature had invested itself with the power to reject, amend or modify the state water plan adopted by the Water Resources Board. There, a unanimous Court said:

The Board is the state "water resource agency" contemplated by Idaho Const. Art. 15, § 7, and in that constitutional provision the agency is specifically empowered to "formulate and implement a state water plan." Appellants argue, however, that the concluding phrase in Art. 15, § 7, "all such laws as may be prescribed by the legislature," subordinates the powers of the agency to those of the legislature, giving the legislature authority to amend or reject the formulated water plan of the Board.

. . . .

. . . [W]e interpret the phrase in question to be an expression of the legislature's authority to enact such laws as may be necessary to the carrying out of the purposes of the constitutional provision. . . .

The next question is whether I.C. § 42–1736 is constitutional. Of course, it follows from our interpretation of Art. 15, § 7, above, that it is not, since it purports to authorize the legislature to perform functions constitutionally assigned to the Board. But even if I.C. § 42–1736 had authorized legislative action which was not in conflict with Art. 15, § 7 of the constitution, it could still have no legal effect because it provides for legislative action on the state water plan by means of a concurrent resolution. The state legislature can enact no law except it be by the constitutionally prescribed process, which requires that every bill, before it becomes law, be presented to the governor. Idaho Const. Art. 3, § 15; Art. 4, § 10. To the extent that Art. 15, § 7 authorizes the legisla-

ture to influence the operation of the Water Resources Board, it does so only as to "such *laws* as may be prescribed by the legislature". Legislative action by resolution is not a "law" in that context. *Id.* at 572–74, 661 P.2d at 738–40 (emphasis added).

The question that must be answered before we can determine whether the decision in *Idaho Power Co. v. State* is applicable in resolving the fundamental issue presented in this case is: what was the nature of the power that the Water Resources Board was exercising in formulating and implementing a state water plan? If it was legislative power, the decision has no application to this case. In that case we would construe article 15, section 7, to be an exercise of the prerogative of the people through the constitution to direct one department to exercise a power belonging to another department. ID. CONST. art. 2, § 1 ("No person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.") On the other hand, if it was an authorization to exercise administrative power in the same sense that administrative agencies are authorized by the legislature to promulgate rules, it would be applicable here.

In my view, the power given to the Water Resources Board by article 15, section 7, "to formulate and implement a state water plan for optimum development of water resources in the public interest" was not pure legislative power, but was instead authorization to carry out by administrative action a purpose established by the people in amending the constitution.

In 1965 the legislature carried out its authority to provide for the composition of the Water Resource Agency:

Pursuant to the provisions of article 15, section 7, of the constitution of the state of Idaho, there is hereby established as the constitutional water agency within the department of water resources the Idaho water resource board which shall consist of eight (8) appointed members. I.C. § 42–1732 (Supp.1989).

The Water Resources Board then became part of an agency that is part of the executive department—the Department of Water Resources. I.C. § 42–1701(1) (1977) ("There is hereby created the department of water resources, which shall, for the purposes of section 20, article IV, of the Constitution of the state of Idaho, be an executive department of the state government."). As an executive agency, the Water Resources Board may exercise only those powers given to it by article 15, section 7, or as authorized by the legislature. Additional powers and duties of the Water Resources Board have been stated by the legislature in I.C. § 42–1734. The only thing unique about the authorization to formulate and implement a state water plan granted to the Water Resources Board by article 15, section 7, is that since it is granted by the constitution and not by the legislature, it may only be taken away or limited by constitutional amendment, not by legislative action. This distinguishes this authorization to formulate and implement a state water plan from the powers granted to the Water Resources Board by the legislature.

Returning to *Idaho Power Co. v. State,* it is now clear to me that the principle established when this Court decided that the legislature by concurrent resolution could not affect the state water plan developed by the Water Resources Board is directly applicable to resolving the constitutionality of that part of I.C. § 67–5218 which allows the legislature by concurrent resolution to reject, amend or modify a rule promulgated by the Board of Health and Welfare. While all authority of the Board of Health and Welfare is statutory and none is established by the constitution, that only affects whether the legislature may by statute amend or repeal the grant of that authority. It does not affect the principle that the legislature may not by concurrent resolution override the exercise of administrative authority.

## III.

## VIOLATION OF THE SEPARATION OF POWERS OF THE LEGISLATIVE AND JUDICIAL DEPARTMENTS.

I also conclude that I.C. § 67–5218 is constitutionally flawed so far as it allows the legislature to determine whether an agency rule violates the legislative intent of the statute under which the rule was made. As I see it, this determination is a judicial function under our constitution.

In *Holly Care Center v. State Department of Employment,* 110 Idaho 76, 714 P.2d 45 (1986), this Court held that rules of the Department of Employment were invalid because they contravened statutory law. In words pertinent to this case, we said:

We begin by noting that there is no serious question about the authority the Department of Employment has in promulgating rules relating to Idaho's Employment Security Law.... [A]dministrative rules are invalid which do not carry into effect the legislature's intent as revealed by existing statutory law, and which are not reasonably related to the purposes of the enabling legislation.

In *Howard v. Missman,* 81 Idaho 82, 88, 337 P.2d 592, 595 (1959), this Court stated that traffic rules and regulations, "lawfully adopted and placed by administrative authority, *and which are not merely arbitrary or capricious,* have the force and effect of law...." That statement is equally applicable to other types of administrative acts, including, as we have here, rule making.

Thus, our inquiry is whether the rules here in question are consonant with I.C. § 72–1319—the legislature's expressed intent on determining major and minor tax delinquencies—and whether the rules are reasonably related to that section. Because we hold that the rules fail on both accounts, we reverse the Industrial Commission's decision.

110 Idaho at 78, 714 P.2d at 47 (citations omitted) (emphasis in original). We reached this conclusion despite the fact that the legislature had approved the rules in question as not violating the intent of the statute. This decision clearly reveals the power the judiciary has to determine whether an agency rule is contrary to the authority granted by the legislature to promulgate rules to carry out the intent of the legislature.

The legislative power is the power to enact law. The judicial power includes the "inherent power to render decisions regarding Idaho law." *Sunshine Mining Co. v. Allendale Mut. Ins.,* 105 Idaho 133, 136, 666 P.2d 1144, 1147 (1983). We have traditionally exercised this power in determining whether administrative rules exceed the authority given to the agency by the legislature. *E.g., State v. Taylor,* 58 Idaho 656, 78 P.2d 125 (1938); *State v. Heitz,* 72 Idaho 107, 238 P.2d 439 (1951); *Abbot v. State Tax Comm'n,* 88 Idaho 200, 398 P.2d 221 (1965); *Beker Indus., Inc. v. Georgetown Irrigation Dist.,* 101 Idaho 187, 610 P.2d 546 (1980); *Holly Care Center v. State Dep't of Employment,* 110 Idaho 76, 714 P.2d 45 (1986).

I see a violation of judicial power in treating as an exercise of legislative power a finding by a sitting legislature that a rule promulgated by an agency violates the intent of a statute enacted by a prior legislature. What is involved in making such a finding is an adjudication of legislative intent. How does the legislature go about determining what was intended by their predecessors? I assume they must look at the language of the statute, the purpose that is evident from its context, the circumstances that brought about the legislation, the statement of purpose, the opinions of legislators and others who participated in its formulation and adoption, committee reports and other materials that might shed light on legislative intent. This process is clearly a judicial, not a legislative, function. Our courts struggle daily with this question. I am not prepared to say that the legislature may now by concurrent resolution declare what a prior legislature intended by a particular statute.

## IV.

## CONCLUSION.

With these principles in mind, I would resolve the matter now before us as follows:

1. The legislature has authorized the Board of Health and Welfare to adopt: ... rules, regulations, codes and standards, as may be necessary to deal with problems related to ... water pollution ..., and licensure and certification requirements pertinent thereto, which shall, upon adoption by the board, have the force of law relating to any purpose which may be necessary and feasible for enforcing the provisions of [the Environmental Protection and Health Act], including, but not limited to the prevention, control or abatement of environmental pollution or degradation and the maintenance and protection of personal health. Any such regulation or standard may be of general application throughout the state or may be limited as to times, places, circumstances or conditions in order to make due allowance for variations therein.

 I.C. § 39–105(2) (Supp.1989).

2. The legislature has also authorized the Board of Health and Welfare to adopt rules and regulations for the construction of sewage treatment works. I.C. § 39–3602(C)(3) (Supp. 1989).

3. Pursuant to the authority granted by the legislature to the Board of Health and Welfare by Title 39, Chapter 1 and Title 39, Chapter 36, Idaho Code, the Board adopted "REGULATIONS FOR INDIVIDUAL/SUBSURFACE SEWAGE DISPOSAL SYSTEMS" on October 15, 1985. IDAPA 16.01.3001–999.

4. If the legislature believed that the regulations concerning individual subsurface sewage disposal systems violated the legislative intent of the statutes pursuant to which the regulations were adopted, or if the legislature simply did not agree with the regulations, the legislature had the power to amend or repeal the statutes in the usual legislative manner.

5. If any interested person believed that the regulations violated the legislative intent of the statutes pursuant to which they were adopted, that person could bring an action in court to have the regulation declared invalid.

6. The attempt of the legislature by a concurrent resolution adopted pursuant to I.C. § 67–5218 to reject the regulations constitutes an effort by the legislature to:

 a. take over a function of an executive agency; and

 b. usurp the judicial authority to determine whether the rules of the agency violated legislative intent.

If the legislature by concurrent resolution can nullify the rules of an administrative agency, then that agency has, in effect, become no more than an arm of the legislature, subject to its management. This would improperly breach the separation between the legislative and executive departments.

If the legislature sitting in 1989 can adjudicate whether the intent of the legislature sitting in the years when I.C. §§ 39–105(2) and 39–3602(C)(3) were enacted has been violated, then the legislature has become, in effect, a court.

Neither of these results comports with my understanding of the proper constitutional separation of the three departments of our state government.

BISTLINE, Justice, dissenting.

Initially, I state the issue somewhat differently than has Justice McDevitt at page 5 of the slip opinion. This is accomplished by rephrasing: The issue before the Court is whether the Idaho Legislature may, *by resolution,* rescind the rules promulgated by an executive department board or agency pursuant to the authority of I.C. §§ 67–5205, *et seq.* If the issue were whether the legislature could do so by *enactment,* there would be no need to take pen in hand: "The legislative power of the state shall be vested in a senate and house of representatives. The enacting clause of every bill shall be as follows: Be it enacted by the Legislature of the State of Idaho." IDAHO CONST., art. 3, § 1. "No law shall be passed except by bill, nor shall...." IDAHO CONST., art. 3, § 15.

Seventy-three years ago this Court in *Griffith v. Van Deusen*, 31 Idaho 136, 169 P. 929 (1917), came to the same principle enunciated by Justice Ailshie, joined by Justices Sullivan and Stuart in *Balderston v. Brady*, 17 Idaho 567, 107 P. 493 (1910). Significantly, the author of *Griffith* was Justice Morgan, and the two Justices who joined his opinion were Justices Rice and Budge. Even of more significance, Justice Morgan had not been made aware of the *Balderston* rationale, did not mention it, but decided the issue independently.

Eighty years ago this past January, Justice Ailshie authored the opinion for a unanimous Court which was confronted with a difficult proposition, the determination of which could not help but be unpopular with the entire general population of Idaho. *Balderston v. Brady*, 17 Idaho 567, 107 P. 493 (1910). Under the provisions of an 1894 congressional enactment, 28 Stat. at Large, 372 and 394, the governor of Idaho in July of 1901 applied to the commission of the General Land Office for a survey of Township 44 North, Range 2 and 3 East, Boise Meridian, in Shoshone County. Notice of the application was published in the Idaho State Tribune, Wallace, Idaho, and the federal government made the survey. Plats were filed with the United States Land Office at Coeur d'Alene, Idaho, on July 5, 1905. Acting on the 1901 published notice of application, a number of settlers went upon the lands and made their residences. On completion of the survey and ruling of approved plats, the settlers submitted their homestead filings, only to be rejected because the commissioner of the land office had neglected to give notice to the local land office at Coeur d'Alene of the Governor's application on behalf of the state. An appeal by the state from those rejections to the commissioner of the General Land Office was to no avail. A second appeal by the settlers taken to the Secretary of Interior was to no avail. The lands stayed in state ownership.

With that being the state of affairs, and the general election of 1908 coming on, candidates of both major parties generously promised that on election the state would relinquish ownership in favor of the set-

tlers. On March 2, 1909, the campaign promises became more than illusory, at first blush at least. The legislature voted into effect, House Joint Resolution No. 10, which is found in the 1909 Idaho Sess. Laws. 451, in the midst of a considerable number of senate and house joint memorials and joint resolutions. No. 10 provided for the appointment of a commission authorized to take testimony, make findings, and to file the same with the State Land Board together with recommendations that certain tracts of land claimed by the various settlers be relinquished and that the state's filing thereon be cancelled.

The action which culminated in *Balderston* was filed to prevent the foregoing from taking place. There were many interesting issues raised by the pleadings, some of which were given brief discussion before the Court approached—not the validity of the resolution—but rather its legal effect:

> Passing now to a consideration of the action of the legislature, we find that the joint resolution of March 2, 1909, under which this commission was appointed and the report has been made, is not a law of the state. It is not enacted in the manner provided for the enactment of a law (sec. 15, art. 3), and it is not contended that it is a law. On the other hand, it directs 'that the state board of land commissioners shall, within thirty days after the filing in their offices of the report and recommendations of the said commission, relinquish or cause to be relinquished all the rights of the state of Idaho to the lands claimed by said claimants, or such portion thereof as may be recommended to the favorable action of the state board of land commissioners.' This is not advisory or recommendatory, but is made mandatory.

*Balderston v. Brady*, 17 Idaho 567, 577, 107 P. 493, 496. By that last sentence, this Court was there holding, just twenty years into statehood, that the force and effect of joint resolutions or concurrent resolutions is just that much, advisory or recommendatory, but nothing more. Just seven years ago this March, *Balderston v. Brady*, to-

gether with *Griffith v. Van Deusen*,[7] were cited for the same proposition, *i.e.*, that *legislative action by resolution is not law. Idaho Power Co. v. State of Idaho; Water Resource Board*, 104 Idaho 570, 661 P.2d 736 (1983). Hence it has no legal effect whatever. That principle has been so long ago well settled and laid to rest that it should indeed startle jurists and scholars to see this day one and more justices voting to give any effect to a resolution, other than to note that it is advisory or recommendatory.

As intimated earlier herein, the case law is sound and is controlling. Nothing stands in the way of the legislature, however, should it care to do so, proceeding with the enactment of a bill into law. In that regard it should take note of the views of Justice Johnson, with which I generally agree. Specifically, I agree with his Part III, and concur therein. In doing so I also stand firmly on that which I wrote in Part III B of *Holly Care Center v. State, Dept. of Emp.*, 110 Idaho 76, 81–82, 714 P.2d 45, 50–51 (1986).

In sum, the resolution, if it had the effect of law, would command affirmative rulemaking and rescission-ordering on the part of the Department of Health and Welfare. In my view, far better to do it the old-fashioned way—enact it!

---

**7.** Cited as 31 Idaho 136, 169 P. 929 (1917).